**Renee SOPER, a minor, by her mother and next friend, Lina SOPER; Lina Soper, individually, Plaintiffs–Appellants,**

v.

**Christine A. HOBEN; Michelle Harmala; Robert Shaw; James H. Doyle; Huron Valley School District; Board of Education of the Huron Valley School District, jointly and severally, Defendants–Appellees.**

No. 98–1550.

United States Court of Appeals, Sixth Circuit.

Argued April 23, 1999.

Decided Nov. 2, 1999.

846

Charles Y. Cooper (argued and briefed), Cooper, Shifman, Gabe, Quinn & Seymour, Royal Oak, MI, for Plaintiffs–Appellants.

Noreen L. Slank, Collins, Einhorn, Farrell & Ulanoff, Southfield, MI, Richard E. Kroopnick, Pollard & Albertson, Bloomfield Hills, MI, Elizabeth M. Malone (argued and briefed), Dise & Associates, Southfield, MI, for Defendants–Appellees.

Before: KENNEDY, SILER, and MOORE, Circuit Judges.

SILER, J., delivered the opinion of the court, in which KENNEDY, J., joined. MOORE, J. (pp. ——–——), delivered a separate opinion concurring in part and dissenting in part.

## OPINION

SILER, Circuit Judge.

Plaintiffs, Renee Soper, a minor, by her mother and next friend, Lina Soper, and Lina Soper, individually, appeal the district court's grant of summary judgment to defendants in this action for negligence and gross negligence under state law, vio-

lations of 42 U.S.C. § 1983, and violations of 20 U.S.C. § 1681. For the following reasons, this court AFFIRMS.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involves the harassment, sexual molestation, and rape of a female special education student by three of her classmates at school and on the bus. The crux of the case is who, if anyone, may be held liable for Renee's injuries under federal or state law.

### Factual Background

Renee is a mentally retarded adopted foster child. Because of her learning disability, Renee attended special education or "educable mentally impaired" ("EMI")([1]) classes starting in the second grade at Oxbow Elementary of the Huron Valley Public Schools ("HVPS"), but also attended certain mainstream classes outside the special education program, to which she would walk unattended. Each year, the school conducted an Individualized Educational Planning Committee ("IEPC") meeting, which Ms. Soper and Renee's teachers would attend to discuss Renee's educational, social, and physical needs. Additionally, psychological evaluations were performed periodically and reports issued on Renee throughout her school years.

Both Ms. Soper and Renee's teacher, Kathy Rombach, noticed that Renee engaged in frequent hugging of other adults and children while in grade school, a common characteristic of Down's Syndrome children. While the hugging was not sexual in nature, the two women worked to decrease the behavior. In 1993, while Renee was a student at Oxbow Elementary, Boy A (who is one or two years older than Renee and was then a student in defendant Michele Harmala's EMI classroom in the middle school) and Renee left the school boundaries together. Later, Renee told her mother that Boy A had kissed her and said that he could not wait for her to come to junior high. Ms. Soper reported the incident to Rombach and asked her to make sure that someone would keep an eye on Renee and Boy A so as to prevent any further incidents. Boy B and Boy C were also in Rombach's EMI class with Renee. While at Oxbow, Renee never encountered any problems with Boy B or Boy C.

At an IEPC meeting in May 1994, before Renee entered Muir Middle School, it was decided that Renee would continue in the EMI program.([2]) Harmala was designated as the teacher responsible for implementing Renee's IEP. The IEPC report lists Renee's cognitive level of functioning at age seven years and six months, although her chronological age was twelve years. At the May meeting, Ms. Soper contends that she discussed Renee's history of sexual abuse by her foster brother([3]) as well as the incident with Boy A in

---

1. Educable Mentally Impaired means a person identified ... as having all the following behavioral characteristics:

 (a) Development at a rate approximately 2 to 3 standard deviations below the mean as determined through intellectual assessment.
 (b) Scores approximately within the lowest 6 percentiles on a standardized test in reading and arithmetic.
 (c) Lack of development primarily in the cognitive domain.
 (d) Unsatisfactory academic performance not found to be based on [her] social, economic and cultural background.
 Rule 340.1705, Michigan Administrative Code.

2. Renee's May 1994 psychological report recommended her for the EMI basic classroom program at Muir Middle School and that her "main streaming be increased in that setting" even though her "adaptive behavior does not appear normal or close to a fifth grade level of independent functioning when compared to normal peers." The report also noted that her "social responsibility and personal independence [are] still quite deficient for her age."

3. At the age of nine, Renee was sexually abused by one of her foster brothers. As a result, she has undergone psychological therapy.

elementary school. In response to Ms. Soper's concerns, Ms. Soper submits that Harmala said, "we'll keep an eye on the children. They're well supervised." Harmala denies that Ms. Soper mentioned Boy A to her as a concern or that she assured Ms. Soper that Renee would be supervised at all times while she was in school. Ms. Soper did not voice any concerns about Boy B or Boy C.

Renee entered Muir Middle School in August 1994. At that time defendant Christine Hoben was the school principal; Ronald Mango was the assistant principal; defendant Robert Shaw was the Director of Special Education; and defendant James Doyle was the Superintendent of Schools. Renee was placed in Harmala's EMI classroom[4] with ten other students.[5] Boy A, Boy B, and Boy C were also in this class. Although Harmala had requested an aide because of the increasing number of students and because of the multi-station curriculum in her class, one was not provided.

At the initial meeting at the beginning of the 1994 school year, Ms. Soper expressed further concern about Boy A to Harmala. (Rombach also attended this meeting.) At the time, Ms. Soper was aware of Boy A's abusive family background, and told Harmala that she did not want her daughter left alone with Boy A. Harmala denies having heard this. Additionally, Harmala, who had taught Boy A for the two previous years, submits that she never observed any sexually aggressive behavior by Boy A toward other students in the class. Likewise, a psychological evaluation performed in May 1994 on Boy A revealed no inappropriate sexual behavior by Boy A.

4. The special education classroom at the middle school was referred to as the "back room." The doors to the classroom and the copy room were solid doors without glass.

5. The maximum number of children allowed in an EMI classroom is fifteen.

6. Mango separately interviewed Boys A, B, and C, as well as the bus driver, who denied

On the evening of October 6, 1994, Ms. Soper met with Harmala for a scheduled parent-teacher conference and raised the following issues regarding Renee: (1) diet; (2) hygiene; (3) locker problems involving another student; (4) bra-snapping; and (5) story telling. When Ms. Soper returned home, Renee told her that Boy B and Boy C fondled her breasts and vagina at Muir Middle School in the back of the classroom while the teacher was outside in the hallway, that the boys did the same on the school bus, and that Boy A had raped her at school. As to the latter incident, she explained that her teacher allowed Boy A to accompany her to her locker to assist her in getting the door open, and that while Harmala was locking up the classroom for lunchtime, Boy A told her to hide in the back room, and that after the teacher left, he raped her. She reported that all the boys had threatened to beat her up if she told anyone. Boy A alleges that the sexual penetration was consensual and Boy B and Boy C deny any sexual misconduct.

Ms. Soper confronted Harmala and Hoben immediately and then reported the incidents to the police. The next day, Harmala reported Renee's allegations to Child Protective Services and contacted Renee's mainstream teachers to arrange for a plan of increased supervision of Renee while in school. Harmala, Hoben, Mango, and Shaw met to discuss the allegations and an immediate investigation[6] as well as a plan for Renee's protection while in school. They prepared a plan for increased supervision of Renee while in school, including an escort. However, Ms. Soper opted to keep Renee at home, as Boys A, B, and C were allowed to continue attending Muir Middle School during the police investigation.[7]

knowledge of any inappropriate behavior. Defendants contend that no facts came forward during the district's investigation to warrant disciplinary action against any of the boys.

7. After the reported incident, the school continued to allow Boy A to work as an aide in the front office, but gave the staff instructions not to let him leave the office unaccompanied.

After the reported rape, the HVPS District implemented several remedial steps: (1) windows were installed in the doors; (2) an aide was placed in Harmala's classroom; (3) the hall pass rule was implemented; and (4) an aide accompanied students on the bus. Furthermore, Renee and Boys A, B, and C were advised to attend student counseling sessions concerning how to function socially with the opposite sex.

While the police conducted a criminal investigation they did not communicate the preliminary findings to the HVPS. In January 1995, after the school received word that Boy A would be charged, he was suspended under threat of expulsion for the remainder of the year. Boy B and Boy C were not prosecuted and therefore not disciplined by the school. Renee voluntarily returned to school in January 1995.

### Procedural History

The Sopers filed their complaint in the Oakland County Circuit Court, alleging claims for negligence, gross negligence, and violations of 42 U.S.C. § 1983 and 20 U.S.C. § 1681 ("Title IX"), against Harmala, Hoben, Shaw, Doyle, the HVPS District, and the HVPS Board. Defendants removed the action to federal court. The district court granted defendants' motion for summary judgment.

### STANDARD OF REVIEW

■ Whether a district court correctly dismissed a suit pursuant to FED. R. CIV. P. 12(b)(6) is a question of law subject to *de novo* review. *See Wright v. Metro-Health Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir.1995). However, if the district court considered matters outside the pleading when ruling on a motion to dismiss, this court will treat the motion as one for summary judgment pursuant to FED. R. CIV. P. 56.

■ This court reviews an order granting summary judgment *de novo* and hence

uses the same test as the district court. *See Harrow Prods., Inc. v. Liberty Mutual Ins. Co.*, 64 F.3d 1015, 1019 (6th Cir.1995). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence offered] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### ANALYSIS

#### *Negligence and Gross Negligence*

In response to the Sopers' state tort law claims of negligence and gross negligence, defendants Harmala, Hoben, Shaw, Doyle, the HVPS District, and the HVPS Board properly claim immunity.

Michigan statutory law provides for absolute immunity and governmental immunity from tort liability in certain situations. The relevant statute provides in part:

(2) [Governmental immunity.] Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while in the course of employment or service or volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

(3) Subsection (2) shall not be construed as altering the law of intentional torts as it existed before July 7, 1986.

.　.　.　.　.

(5) [Absolute immunity.] Judges, legislators, and the elective or highest appointive executive officials of all levels of government are immune from tort liability for injuries to persons or damages to property whenever they are acting within the scope of their judicial, legislative, or executive authority.

Mich. Comp. Laws. Ann. § 691.1407. The question is which, if any, type of immunity shields each defendant from the Sopers' state law claims.

### Defendant Doyle

■ The district court correctly found that as superintendent of the HVPS District, defendant Doyle has absolute immunity pursuant to Mich. Comp. Laws Ann. § 691.1407(5). *See Nalepa v. Plymouth–Canton Comm. Sch. Dist.*, 207 Mich.App. 580, 525 N.W.2d 897, 901 (1994) (holding superintendent of schools enjoys absolute immunity under the statute).

### Defendants Harmala, Hoben, Shaw, the HVPS District, and the HVPS Board

■ These defendants are immune from suits for ordinary negligence under the statute. However, the Sopers argue that the following actions constitute gross negligence: (1) the failure to have a policy in effect to protect at-risk students like Renee; (2) Harmala's failure to supervise Renee so as to make sure that she was taken from the classroom to the cafeteria; and (3) the failure to place a para-professional in Harmala's classroom. The district court properly found that defendants Harmala, Hoben, Shaw, the HVPS District, and the HVPS Board are shielded from the Sopers' state tort claims by governmental immunity as set forth in Mich. Comp. Laws Ann. § 691.1407(2) because their conduct was not grossly negligent as a matter of law.

Gross negligence is defined in the statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws Ann. § 691.1407(2). Plaintiffs argue that because they have alleged "some" improper conduct on the part of defendants, whether it constitutes gross negligence within the meaning of the statute is a factual question to be determined by a jury. For this proposition, plaintiffs cite *Tallman v. Markstrom*, 180 Mich.App. 141, 446 N.W.2d 618, 619 (1989) (finding plaintiff's complaint alleged sufficient conduct to support a claim of gross negligence and stating, "once a standard of conduct is established, the reasonableness of an actor's conduct under the standard is a question for the fact finder, not the court"). However, in *Vermilya v. Dunham*, 195 Mich.App. 79, 489 N.W.2d 496 (1992), the Michigan Court of Appeals rejected the assertion that *Tallman* "precludes a grant of summary disposition in every case in which a plaintiff alleges that negligent conduct by a defendant government employee resulted in injury." *Id.* at 499. Rather, it held that the proper view is that "summary disposition is precluded in cases in which reasonable jurors could honestly have reached different conclusions with regard to whether the defendant's conduct amounted to gross negligence. However,

if, on the basis of the evidence presented, reasonable minds could not differ, then the motion for summary judgment should be granted." *Id.*

The district court correctly found that reasonable minds could not find that the failure to have a policy in effect to protect at-risk students and/or the failure to place a para-professional in Harmala's classroom constitutes gross negligence. Additionally, even assuming the Sopers' factual assertions are true regarding Harmala's knowledge and conduct, we agree that reasonable minds could not find that Harmala's conduct constitutes gross negligence.

## 42 U.S.C. § 1983

■ To state a claim under § 1983, the Sopers must establish that a person acting under color of state law deprived Renee of a federal right. *See Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).([8]) The Sopers assert that defendants, acting under color of state law, violated Renee's constitutional right to equal protection and liberty as preserved by the Due Process clauses of the Fifth and Fourteenth Amendments.

### Existence of a Constitutional Right

#### Equal Protection

■ In order to establish an equal protection violation, the Sopers must show that Renee's complaints were treated differently by the HVPS than were complaints by Renee's male counterparts. *See Soto v. Flores,* 103 F.3d 1056, 1067 (1st Cir.1997). In short, the Sopers must establish that the HVPS treated the complaints differently "because of, not merely in spite of, the harmful [disparate] effect that such treatment would have." *Doe v. Londonderry School District,* 970 F.Supp. 64, 77 (D.N.H.1997) (internal quotations and citations omitted). The Sopers have

not produced that evidence. The district court properly dismissed this claim.

### Liberty Interest in Bodily Integrity

The Due Process clause protects the right against "unjustified intrusions on personal security" at the hands of the state. *Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Extrapolating, the Supreme Court has held that certain "special relationships" created or assumed by the State with respect to particular individuals may give rise to such an affirmative duty and are enforceable through the Due Process clause to provide adequate protection. *See DeShaney v. Winnebago County DSS,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (holding State did not have constitutional duty to protect a minor against violence committed by his father, a private actor). The purpose of the Due Process clause is "to protect people from the State, not to ensure that the State protect[s] them from each other." *Id.* at 196, 109 S.Ct. 998. Recently, the Supreme Court has reiterated the narrowness of *DeShaney,* noting that it only limits "the constitutional duty of officials to protect against assault by private parties." *United States v. Lanier,* 520 U.S. 259, 272 fn. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (stating "*DeShaney* does not hold ... that there is no constitutional right to be free from assault committed by state officials themselves outside of a custodial setting").

■ It is clear that a constitutional violation arises if a school official physically violates a student. *See, e.g., Doe v. Claiborne County,* 103 F.3d 495 (6th Cir. 1996) (holding schoolchild's right to personal security and to bodily integrity manifestly embraces right to be free from sexual abuse at the hands of a public schoolteacher). However, the Sopers argue that Boys A, B, and C violated Re-

---

**8.** "The second element requires the plaintiff to prove not only a deprivation of federal right, but also that the defendant's conduct was a cause in fact of the alleged depriva-

tion." *Soto v. Flores,* 103 F.3d 1056, 1062 (1st Cir.1997) (citing *Maldonado Santiago v. Velazquez Garcia,* 821 F.2d 822, 831 (1st Cir. 1987)).

nee's protected liberty interest in bodily integrity and that because the students who harmed Renee were under the control of the HVPS and because HVPS had a "special relationship" with Renee, HVPS may be held liable for violating Renee's Due Process rights. The district court correctly found that this argument fails, as the facts at bar do not give rise to a constitutional violation. First, the persons who harmed Renee were private actors, not governmental or school officials acting under color of state law or pursuant to governmental or school policies. Additionally, there is no "special relationship" between the HVPS and Renee. *See Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 911 (6th Cir.1995) (listing cases from other jurisdictions and holding that compulsory school attendance does not create a special relationship between school districts and their students that gives rise to an affirmative duty to protect its students). *See also Claiborne County*, 103 F.3d at 510 (listing cases from other jurisdictions and stating "*in loco parentis* status or state's compulsory attendance laws do not sufficiently 'restrain' students to raise a school's common law obligation [to create and maintain a safe environment for its students] to the rank of a constitutional duty").

### Potential Liability of Defendants

### Harmala, Hoben, Shaw, and Doyle

 Governmental officials may be held personally liable for damages under § 1983 based upon actions taken in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (holding state officials sued in their individual capacities are "persons" within the meaning of section 1983). Generally, plaintiffs must designate in which capacity they are suing defendants; if not, by operation of law, defendants are deemed sued in their official capacities.

*See Hardin v. Straub*, 954 F.2d 1193, 1199 (6th Cir.1992); *Wells v. Brown*, 891 F.2d 591, 592–94 (6th Cir.1989). Suing a public official in his official capacity for acts performed within the scope of his authority is equivalent to suing the governmental entity. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In this case, plaintiffs failed to designate in which capacity they sued defendants. However, because the parties did not brief the issue of defendants' liability in this fashion, but rather discussed qualified immunity, this court will not affirm on the basis of plaintiffs' mis-designation. *Cf. Abdur–Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 491 (6th Cir.1995).

 A government official performing a discretionary function is entitled to qualified immunity from suit for civil damages unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Accordingly, to survive a qualified immunity defense, plaintiffs must show that defendants, acting under color of state law, deprived Renee "of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (citations omitted). As discussed above, plaintiffs cannot show a violation of a constitutionally protected right. Accordingly, defendants are entitled to qualified immunity in their individual capacities.

### The HVPS District and The HVPS Board[9]

 A local governmental entity may be held liable under 42 U.S.C. § 1983 for violations of federal law committed pursuant to a governmental "policy or custom." *See Monell v. Dept. of Social Services of*

---

**9.** The parties briefly mention Eleventh Amendment immunity. However, because the HVPS District and the HVPS Board are not arms of the State, the discussion of Eleventh Amendment immunity is misplaced.

*the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A school district is a local governmental entity. See *Lopez v. Houston Ind. Sch. Dist.*, 817 F.2d 351, 353 (5th Cir.1987). It logically follows that a school board is also a local governmental entity.

In order for plaintiffs to prevail on their § 1983 claim against the HVPS District and the HVPS Board, they must establish that the HVPS official policy or custom caused the alleged constitutional violation. See *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. However, because there is no constitutional violation, as discussed previously, no further analysis is warranted.

### 20 U.S.C. § 1681

The Sopers bring their Title IX claim against all named defendants for sex discrimination based on student-on-student sexual harassment. Title IX provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....

20 U.S.C. § 1681.

### Liability Under Title IX

■ When this action was argued on appeal, it was clear that an implied private right of action under Title IX existed, see *Cannon v. University of Chicago*, 441 U.S. 677, 691–94, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), and that money damages were available in such suits, see *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). However, it was not until recently that a court with binding authority found that only recipients of federal funds may be liable for damages under Title IX. See *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 119 S.Ct. 1661, 1669–70, 143 L.Ed.2d 839 (1999) (citing *National Collegiate Athletic Assn. v. Smith*, 525 U.S. 459, 119 S.Ct. 924, 929, n. 5, 142 L.Ed.2d 929 (1999) (rejecting suggestion "that the private right of action available under ... § 1681(a) is potentially broader than the Government's enforcement authority")). See also *Clay v. Board of Trustees of Neosho County Community College*, 905 F.Supp. 1488, 1495–96 (D.Kan.1995); *Bowers v. Baylor Univ.*, 862 F.Supp. 142, 145 (W.D.Tex.1994); *Doe v. Petaluma City Sch. Dist.*, 830 F.Supp. 1560, 1563 (N.D.Cal.1993), *on reconsideration*, 949 F.Supp. 1415 (N.D.Cal.1996). Accordingly, the district court correctly dismissed the Sopers' Title IX claim against defendants in their individual capacities.

### Title IX Liability of a Federally Funded School for Student–On–Student Sexual Harassment

■ When this law suit was argued on appeal, it was known that sexual harassment of a student in a federally funded educational program or activity, if perpetrated by a teacher or other employee of the funding recipient, could render the recipient liable for damages under Title IX. See *Franklin*, 503 U.S. at 76, 112 S.Ct. 1028. However, at that time, the circuits were split on the issue of whether Title IX encompasses a claim for intentional discrimination on the basis of sex when grounded solely upon student-on-student sexual harassment. Since oral argument, the United States Supreme Court decided *Davis v. Monroe County Board of Education*, which established that Title IX may support a claim for student-on-student sexual harassment when the plaintiff can show (1) that the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school, (2) that the funding recipient had actual knowledge of the sexual harassment, and (3) that the funding recipient was deliberately indifferent to the harassment. *Davis*, 119 S.Ct. at 1666–71.

With respect to the first prong of the *Davis* test, there is evidence in the record to support the Sopers' assertion that Re-

nee was raped and sexually abused and harassed. This obviously qualifies as being severe, pervasive, and objectively offensive sexual harassment that could deprive Renee of access to the educational opportunities provided by her school. However, it is the second and third prongs of the *Davis* test which Renee fails.

In the case at bar, defendants did not have actual knowledge of the harassment until after the fact and plaintiffs have failed to present any evidence of deliberate indifference attributable to defendants. Once they did learn of the incidents, they quickly and effectively corrected the situation. Defendants immediately contacted the proper authorities, investigated the incidents themselves, installed windows in the doors of the special education classroom, placed an aide in Harmala's classroom, and created student counseling sessions concerning how to function socially with the opposite sex. Prior to ascertaining the results of their internal investigation and the police criminal investigation, defendants offered to increase the supervision of Renee while in school and provide her an escort. However, Ms. Soper chose to keep Renee at home. Ultimately, when defendants were advised of the results of the criminal investigation, they expelled Boy A. Regardless of Ms. Soper's choice not to allow Renee to return to school despite the accommodations, the HVPS District and the HVPS Board did correct the situation as soon as they had notice of the incidents.

In *Davis*, although the Supreme Court did not pass on the issue, it suggested that the petitioner might be able to show that the Board "subject[ed]" the petitioner's daughter, LaShonda, to discrimination "by failing to respond in any way over a period of five months to complaints of G.F.'s in-school misconduct from LaShonda and other female students." *Davis*, 119 S.Ct. at 1674. In comparison, the prompt and thorough response by school officials to the Sopers' complaint was not "clearly unreasonable in light of the known circum-stances." *See id.* Accordingly, the district court correctly concluded that the Sopers cannot establish Title IX liability.

**AFFIRMED.**

MOORE, Circuit Judge, concurring in part and dissenting in part. ·

Because I disagree with the majority's resolution of the state claim, and with aspects of the opinion on the federal claims, I respectfully dissent from the affirmance of the grant of summary judgment.

Turning to the state tort claim first, the majority asserts as a matter of law and without analysis that the actions of the defendants did not amount to gross negligence under Michigan law. I do not agree. Specifically, whether the actions of Harmala amounted to gross negligence is a question of fact for the jury. Assuming the truth of the plaintiffs's assertions, as we must on a motion for summary judgment by defendants, Harmala was warned specifically about the conduct of Boy A when it came to Renee Soper. Renee's mother indicated that she did not want the two to be alone together and unsupervised at any time, and claims to have told Harmala of her concerns. Nonetheless, Harmala allowed Boy A to accompany Renee Soper to her locker and did not supervise them. They were able to conceal themselves from her at that time and the rape occurred shortly thereafter in the abandoned classroom, while the rest of the students were at lunch. I cannot agree that no rational jury could find that these facts, if proved, amounted to gross negligence on the part of Harmala.

I turn next to the § 1983 claims. The majority properly does not affirm the district court's presumption that the individual defendants were sued only in their official capacities. In this case such a presumption would be inappropriate. Our precedent, *Wells v. Brown*, 891 F.2d 591 (6th Cir.1989), offers two reasons for its conclusion that a suit against state officials in a § 1983 action must make clear

that they are being sued in their individual capacities: the necessity for proper notice to defendants that personal assets may be at risk in a cause of action, and the Eleventh Amendment bar to suits against a state in federal court. In this case, neither concern is valid, and it is improper to presume an official capacity suit.

First, there is no indication that the defendants in this case were prejudiced by the omission. Their brief in support of the motion for summary judgment argues that the individual defendants are entitled to qualified immunity, which is a personal defense. This court has consistently distinguished *Wells* when the facts indicated that the defendants had actual or constructive notice of the capacity in which they were being sued. *See, e.g., Brown v. Shaner*, 172 F.3d 927, 933–34 (6th Cir. 1999) (Second Amended Complaint "related back" to original complaint as to capacity in which officers were being sued because alleged wrongdoing concerned personal conduct, defendants "should have known" they were being sued in their individual capacity, and they were not prejudiced in maintaining a defense on the merits); *Pelfrey v. Chambers*, 43 F.3d 1034, 1037–38 (6th Cir.) (separate motion filed one month after complaint provided sufficient notice of suit against defendants in individual capacity), *cert. denied*, 515 U.S. 1116, 115 S.Ct. 2269, 132 L.Ed.2d 273 (1995); *Abdur–Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 491 (6th Cir.1995) (plaintiff's response to defendant's motion for summary judgment provided sufficient notice that defendant was being sued in his individual capacity).

The first mention of capacity as an issue in this case is the district court's order granting summary judgment. It does not appear that the plaintiffs were given an opportunity to amend their complaint. Until that point, both parties assumed the § 1983 action was in part a suit against the individual defendants in their personal capacity. This is clearly not a case of preju-

dice to the defendants due to lack of notice about the nature of the suit against them—both parties briefed qualified immunity to the district court and to this court. It strikes me as reminiscent of the hypertechnical pleading practice of days gone by for the district court simply to "read out" one of the plaintiffs's causes of action on the basis of a technical deficiency that went unrecognized by both parties, especially when no prejudice accrued to the defendants.

More important, the rationale of *Wells* depends on reading the Federal Rules of Civil Procedure in conjunction with federal Eleventh Amendment jurisprudence. The Federal Rules provide that "[i]t is not necessary to aver the capacity of a party to sue or be sued ... except to the extent required to show the jurisdiction of the court." Fed. R. Civ. P 9(a). The *Wells* court therefore concluded on the facts before it that "because the Eleventh Amendment places a jurisdictional limit on federal courts in civil rights cases against states and state employees, we understand Rule 9(a) to *require* plaintiffs to properly allege capacity in their complaint." *Wells*, 891 F.2d at 593. The Eleventh Amendment is not at issue in this case, as the individual defendants here are municipal employees, and a § 1983 suit against a municipality is not barred by the Eleventh Amendment. As the Supreme Court has written, "[t]here is no longer a need to bring official-capacity actions against local government officials, for ... local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Court went on to say that in cases where the complaint does not clearly specify the capacity in which officials are sued, " '[t]he course of proceedings'... typically will indicate the nature of the liability sought to be imposed." *Id.* The jurisdictional concern of *Wells* is not present here, and "the course of proceedings," as de-

scribed above, indicates that personal liability was sought to be imposed.

The facts before us are much like those in *Perry v. Croucher*, No. 97–3033, 1998 WL 661151, at *7–*8 (6th Cir.1998), in which the complaint used language such as "willfully, maliciously, and with reckless indifference" to describe the defendant's actions, and the defendants pleaded personal immunity in response, acting "with the understanding that they were being sued in their personal capacities." *Id.* at *8. Here, the complaint alleges that the acts of the individual defendants were "reckless, wilful, wanton, malicious and/or intentional," J.A. at 23, it seeks relief from them "jointly and severally in an amount in excess of $10,000," J.A. at 24, and the defendants have acted at all times with the understanding that they are being sued in their individual capacities. For the above reasons, it was error for the district court to deem the § 1983 action as one against the defendants only in their official capacity. Therefore, I believe that the majority properly reaches the qualified immunity defense offered by the defendants and briefed by both parties.

Turning to the Title IX claim, I agree with the majority that it is the federal recipient and not the individual defendants that can be held liable for sexual discrimination under Title IX, but I disagree that this cause of action should have been dismissed on summary judgment. The majority asserts that the Sopers have not presented evidence that the school district or the school board had actual notice of the harassment and were deliberately indifferent to it. If one considers as harassment only the incident of Renee's rape by Boy A, that assertion is correct. When the school learned of the rape, it did take steps to investigate and to prevent recurrence of a similar incident in the future. But if one considers the earlier incidents between Boy A and Renee to be harassment—incidents known to some of the defendants and reported to Renee's teachers as a matter of concern by Renee's mother—the school did have notice of harassment. Although assurances were given, no steps were actually taken to minimize or stop the harassment. The specific request that Renee not be alone in the presence of Boy A was ignored. Arguably, these actions amounted to deliberate indifference to the concerns about harassment brought to Renee's teachers by her mother. I believe that the Sopers at least should have been given the opportunity to make the case that the school's actions amounted to a violation of Title IX, and that dismissal on summary judgment was inappropriate.

For the foregoing reasons, I respectfully dissent from the opinion of the court in this case.