*Ins. Co. v. Vulcan Dev.*                   No. 01-1790

not actionable as a matter of law, pursuant to a tortious interference with a business relationship claim or otherwise.

For this reason, we affirm the district court's judgment in favor of Wausau on Vulcan's tortious interference with a business relationship claim, albeit for reasons other than those articulated by the district court.

## IV.  Conclusion

For the reasons stated above, the judgment of the district court is **AFFIRMED** as to all claims and counterclaims asserted in this action.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2003 FED App. 0083P (6th Cir.)
File Name:  03a0083p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WAUSAU UNDERWRITERS
INSURANCE COMPANY,
            *Plaintiff-Appellee,*

                                            No. 01-1790

            *v.*

VULCAN DEVELOPMENT, INC.,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-70879—Lawrence P. Zatkoff, Chief District Judge.

Argued:  December 10, 2002

Decided and Filed:  March 20, 2003

Before:  MARTIN, Chief Circuit Judge; DAUGHTREY,
Circuit Judge; O'MALLEY, District Judge.[*]

_____

[*] The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

———————

**COUNSEL**

**ARGUED:** Mark K. Wasvary, BECKER & ASSOCIATES, Rochester, Michigan, for Appellant. James E. DeLine, KERR, RUSSELL & WEBER, Detroit, Michigan, for Appellee. **ON BRIEF:** Mark K. Wasvary, BECKER & ASSOCIATES, Rochester, Michigan, Carl G. Becker, CARL G. BECKER & ASSOCIATES, Rochester, Michigan, for Appellant. James E. DeLine, KERR, RUSSELL & WEBER, Detroit, Michigan, for Appellee.

———————

**OPINION**

———————

KATHLEEN M. O'MALLEY, District Judge. This is a diversity contract dispute in which the Plaintiff, Wausau Underwriters Insurance Company ("Wausau"), claims Vulcan Development, Inc. ("Vulcan") breached its contract with Wausau by failing to tender certain premium payments for workers' compensation insurance coverage. Vulcan counterclaimed, alleging that Wausau was the breaching party and that the insurer tortiously interfered with its business relations. The district court granted summary judgment to Wausau on its breach of contract claim and dismissed Vulcan's tort allegation on statute of limitations grounds.

Before this Court, Vulcan does not highlight any genuine issues of material fact, but, rather, argues that the majority of Wausau's claims were barred by the statute of limitations when asserted and that Wausau was the first to breach the parties' contracts by failing to charge appropriate and reasonable premiums for the insurance provided thereunder. Vulcan also argues that, pursuant to Mich. Comp. Laws § 600.5823, its counterclaim for tortious interference with a business relationship is not barred by the statute of limitations.

without justification, there is no factual predicate provided for those assertions. Indeed, the undisputed facts on the record before us compel the opposite conclusion. The Facility provides specific procedures for carriers to follow when cancelling a policy:

> The Servicing Carrier may request cancellation at any time for non-payment of premiums. Approval of the Facility is not required for such cancellation.
>
> If the Servicing Carrier determines that one or more of the following situations exists, it may request permission from the Facility to issue a cancellation notice:
>
> 1. The employer is not entitled to good faith insurance.
> 2. The employer has failed to comply with reasonable safety requirements.
> 3. The employer has violated one or more of the terms and conditions under which the coverage was issued.

Facility Information & Procedures Handbook, Section II Procedures, p. P-7. In this case, the letter that forms the basis of Vulcan's counterclaim, the September 7, 1994 letter from Wausau to the Facility, mimics the language of item one: "We have been attempting to obtain payment for the above-referenced policy. Please advise the current carrier that the insured has an outstanding balance and is no longer in good faith entitled to insurance." (Sept. 7, 1994 letter) Wausau simply informed the Facility that grounds for cancellation of the policy existed and requested that notice of such cancellation be provided to Vulcan. Given our conclusions that Vulcan breached its contract of insurance with Wausau by failing to pay premiums owed, it is clear, moreover, that Wausau was fully justified in seeking cancellation of the Vulcan policy. Because Wausau was authorized to seek cancellation of the policy and did so in the manner dictated by the Facility's own procedures, its actions are justified and are

*Clark v. West Shore Hospital*, No. 00-1419, 2001 WL 897447, 16 Fed. Appx. 421, 430 (6th Cir. July 31, 2002) (quoting *Michigan Podiatric Med. Ass'n v. National Foot Care Program, Inc.*, 438 N.W.2d 349, 354 (Mich. Ct. App. 1989)).  The third element requires more than just purposeful or knowing behavior on the part of the defendant.  *Id.*  The plaintiff must also allege that the interference was either (1) a *per se* wrongful act or (2) a lawful act done "with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another."  *Id.* (quoting *Feldman v. Green*, 360 N.W.2d 881, 891 (Mich. Ct. App. 1984)).  "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference."  *BPS Clinical Labs. v. Blue Cross and Blue Shield of Mich.*, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996).

The facts in *Clark* were much like those here.  Clark was a contract physician at West Shore Hospital.  16 Fed. Appx. at 424.  The contract contained a termination clause, allowing either party to cancel the agreement upon 120 days notice.  The hospital exercised this option and terminated Clark's employment.  *Id.*  Clark filed a lawsuit alleging, among other things, breach of contract and tortious interference with a business relationship.  *Id.* at 425.  Clark claimed that his termination interfered with the business relationships he had developed with certain hospital staff who had been referring patients to him.  *Id.* at 430.  The court affirmed the district court's dismissal of all of Clark's claims.  *Id.* at 423–24.  As to the tortious interference claim, the court found that Clark had failed to allege that the interference was done with malicious intent or that it was unjustified.  *Id.* at 430.  The court found, instead, that the parties' contract authorized Clark's termination and, thus, provided an undisputed legal justification for the hospital's action.

Like those in *Clark*, Vulcan's allegations are simply inadequate to sustain a claim under Michigan law.  While Vulcan asserts that Wausau's conduct was wrongful and

We find that the district court correctly granted summary judgment in favor of Wausau on its breach of contract claim, but find that the district court erred in determining that § 600.5823 did not excuse Vulcan's untimely counterclaim.  Because we conclude, however, that Vulcan has failed to state a claim for tortious interference with a business relationship under Michigan law, we find that summary judgment on that claim is appropriate, regardless of our reading of Mich Comp. Laws § 600.5823.  We therefore **AFFIRM** the district court's judgment, albeit, in some instances, for different reasons.

## I.  Factual Background

Vulcan is a management company that provides employees to various supermarkets in the Detroit area.  Because it was unable to obtain workers' compensation coverage in the open market, Vulcan turned to the Michigan Workers' Compensation Placement Facility (the "Facility") for coverage.

The Facility was created by the Michigan Legislature to provide workers' compensation insurance to employees who are "unable to procure the insurance through ordinary methods."  Mich. Comp. Laws § 500.2301(a).  For the first policy year, the employer, working with its insurance agent, completes an application form and computes an estimated annual premium for the forthcoming policy year.  The estimated premium is based upon the employer's total estimated payroll for the year.  The amount of the premium due is determined by multiplying the Facility's rates by the premium basis.  The applicable rates are determined by the "classification," or job description, of each employee covered by the policy.  The employer pays the initial deposit premium, which is based upon a percentage of the employer's estimated annual premium, to bind coverage.  The agent forwards the application and the deposit premium to the Facility.  The Facility binds the coverage and randomly selects a servicing carrier to whom the employer is "assigned."  The servicing carrier issues a policy in its own name and provides the same

type of service that it would for a policy written on the open market. However, unlike the open market, "[t]he employer is subject to the classifications, rates, experience modifications and rules, determined by the Facility." Mich. Workers' Compensation Placement Facility Info. & Proc. Handbook I-1 (1997). *See also* Mich. Comp. Laws § 500.2318. The final premium is determined by an audit of the insured's actual payroll records at the end of the policy period.

The employer remains assigned to the same servicing carrier until the coverage is canceled or not renewed. Each year, in addition to calculating the final premium due for the prior policy period, the servicing carrier computes an estimated deposit premium for the upcoming year based upon the payroll information supplied by the employer. The servicing carrier then notifies the employer, the agent, and the Facility that it will renew the policy upon the receipt of the deposit premium.

On August 6, 1991, Vulcan, through its own insurance agent, Midwest Underwriters, Inc., applied to the Facility to procure a policy of workers' compensation insurance. The Facility assigned Wausau as the servicing carrier for Vulcan's policy. The first policy Wausau issued to Vulcan covered the period from August 12, 1991 to August 12, 1992. The second policy issued to Vulcan acted as a renewal of the first, and covered the period from August 12, 1992 to August 12, 1993. Vulcan was issued a third policy, which renewed the second, and covered the period from August 12, 1993 to August 12, 1994. The fourth and final policy issued to Vulcan renewed the third and covered the period from August 12, 1994 to August 12, 1995. This last policy ultimately was terminated early on December 12, 1994 for non-payment of premiums. All four policies were identical in structure and scope of coverage.

Vulcan paid both the deposit premium and the estimated premium for the first, second, and third policies at or shortly after each policy was issued. Vulcan disputed, however, and

We agree with the Michigan Supreme Court that § 600.5823 is unambiguous. On its face, it purports to govern *all* counterclaims, allowing for the assertion of any counterclaim that would have been available to the defendant when the plaintiff's action arose. While § 600.5823 limits the scope of recovery available under any untimely counterclaim, it does not limit the *type* of counterclaim that can be asserted. We find that the district court erred in reading such a limitation into the savings statute and that the district court erred when it dismissed Vulcan's tortious interference with a business relationship counterclaim based on that incorrect reading of § 600.5823.

## C. The Court Affirms on Other Grounds

This finding does not end our inquiry, however. We can affirm the district court's judgment on any ground supported by the record, even grounds that are different from those considered or relied upon by the district court. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 441–42 (6th Cir. 2002); *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 569 (6th Cir. 2001). Indeed, we have an obligation to enforce a district court's orders if grounds for doing so are apparent from the record before us. *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985). We find that such grounds exist in this case.

Under Michigan law, a plaintiff must establish the following elements to prevail on a tortious interference with a business relationship claim:

(1) the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted.

The appeals court allowed Patterson's estate to assert the counterclaim without the recovery limitation imposed by § 600.5823. *Id.* at 196.

Wallace appealed to the Michigan Supreme Court, which, in a one-paragraph per curiam decision, reversed the court of appeals and reinstated the trial court's ruling. *Wallace*, 289 N.W.2d 924. The court held that, "[t]he wording of M.C.L. § 600.5823; M.S.A. § 27A.5823 is clear and unambiguous and is not subject to judicial expansion" and concluded that the recovery limitation appearing on the face of the statute must be enforced, regardless of the circumstances. *Id.*

Wausau attempts to distinguish the Michigan Supreme Court's opinion on the grounds that the claims and counterclaims in *Wallace* arose out of the same accident. Wausau also argues that the policy behind statutes of limitations should not allow Vulcan to resurrect its otherwise untimely counterclaim. The Michigan Supreme Court did not rely upon or even mention these grounds as a basis for its decision, however. Indeed, the court sharply rebuked the court of appeal's attempt to circumvent the plain language of the statute on policy grounds.

The only other decision referring to § 600.5823 is *Mudge v. Macomb Cty.*, 580 N.W.2d 845, 855 n.19 (Mich. 1998), where the Michigan Supreme Court held that § 600.5823 does not apply to Prisoner Reimbursement to County Act (PRCA) counterclaims because the plain language of § 600.5823 limits its application to claims with limitations periods prescribed by Chapter 58 of the Revised Judicature Act (the limitation period for PRCA claims are found in another chapter). Again, the Michigan Supreme Court clearly expressed its belief that § 600.5823 is unambiguous and must be applied accordingly.[3]

_____

[3] While the Michigan Supreme Court ultimately allowed the assertion of a counterclaim in *Mudge*, it did so under the common law theory of recoupment, *not* under § 600.5823.

therefore refused to pay, the amount of the final premium calculated by Wausau under all four policies. Vulcan claimed that Wausau improperly classified certain of Vulcan's employees as supermarket employees when they were, in fact, clerical employees. Vulcan claimed that these misclassifications unduly increased the premiums Wausau sought to charge Vulcan because, given the risk of on-the-job injury associated with each position, the rate charged for supermarket employees was many times higher than the rate charged for clerical employees. Vulcan asserted that many of its employees should have been reclassified as clerical rather than supermarket employees and that its premium obligations should have been reduced.

Wausau did not agree with Vulcan's request for reclassification and insisted on the payment of those premiums it claimed were due. After unsuccessful efforts to obtain payment of those premiums, Wausau sent a letter on September 7, 1994 to the Facility, advising it that Vulcan had failed to pay its outstanding premium balance and that Wausau believed Vulcan was no longer acting in good faith or entitled to further insurance.

The Facility made an initial determination as to the proper classification of Vulcan's employees, essentially agreeing with Wausau's classifications. Vulcan still did not pay any further premiums to Wausau and, instead, appealed the Facility's determination to the Facility Appeals Committee on December 21, 1994. On January 16, 1995, after a decision by the Facility Appeals Committee approving the Facility's classifications, Vulcan appealed the classification issue to the Michigan Insurance Commissioner. On July 23, 1996, the Commissioner conducted a hearing on this matter and a settlement was placed on the record by which Vulcan and the Facility agreed to a partial reclassification of Vulcan's employees. A re-audit was conducted by the Facility based upon the settlement and the first, second, and third final premium calculations were revised. Finally, on June 13, 1997, the settlement was finalized by a written Stipulation for

Settlement signed by both Vulcan and the Facility declaring Vulcan's outstanding obligation to Wausau to be $224,792.00. Despite agreeing to the reclassifications, however, and executing the Stipulation for Settlement based on the reaudit, Vulcan still failed to pay Wausau any additional premium payments.

## II. Procedural Background

On February 16, 2000, after Vulcan refused to remit the final premiums to Wausau, Wausau commenced this diversity action for breach of contract and unjust enrichment. On November 21, 2000, the district court allowed Vulcan to assert counterclaims against Wausau for breach of contract and for tortious interference with a business relationship, the latter allegedly arising out of the September 7, 1994 letter Wausau sent to the Facility.

Vulcan moved for summary judgment on Wausau's claims, arguing to the district court that Wausau's breach of contract claim was untimely under Michigan's six-year statute of limitations for actions on a written contract and that, because a written contract existed between the parties, Wausau could not assert a claim for unjust enrichment. Vulcan also argued that, in the event Wausau's contract claim was timely, it was Wausau and not Vulcan who breached the agreement between the parties. Wausau also moved for summary judgment, arguing that there were no material issues of fact on its breach of contract claim and that Wausau was entitled to judgment on that claim as a matter of law in the settlement amount. The district court rejected Vulcan's arguments and granted summary judgment in favor of Wausau on the parties' competing contract claims. The district court did, however, grant summary judgment for Vulcan on the issue of Wausau's unjust enrichment claim, finding that the parties' contract governed Wausau's right to relief.

Wausau also moved, pursuant to Rule 12(b)(6), to dismiss Vulcan's tortious interference with business relationship

or interpret § 600.5823 regarding counterclaims. Indeed, it made quite clear that it was not doing so.

More instructive to the question we face are the two per curiam decisions in *Wallace v. Patterson*, 271 N.W.2d 194 (Mich. Ct. App. 1978) and 289 N.W.2d 924 (Mich. 1979). Wallace and Patterson were involved in a motor vehicle collision that presumably killed Patterson. *Wallace*, 271 N.W.2d at 195. Wallace filed suit against Patterson's estate ten days before the statute of limitations ran on his claim.[2] A few months later, after filing an answer, Patterson's estate filed a counterclaim. Wallace filed a motion for partial summary judgment, arguing that the counterclaim was barred by the statute of limitations. The trial court agreed that the counterclaim was untimely, but allowed the counterclaim under § 600.5823. Pursuant to § 600.5823, the trial court limited recovery under the counterclaim to the amount established by Wallace's claim.

Patterson's estate appealed, arguing that the trial court misapplied § 600.5823. The Michigan Court of Appeals agreed, concluding that, under the circumstances, such a limitation on the counterclaim produced an absurd result. Because Michigan was a contributory negligence state, the court reasoned that, if Wallace was even partially to blame for the accident, Patterson's estate could recover nothing on its counterclaim. Contributory negligence would bar any recovery by Wallace and, since Patterson's estate was limited to the amount Wallace recovered, it too would be barred from recovering anything, even in the extreme case where Wallace was entirely to blame. The court found this could not be the result the legislature intended and refused to apply it because, the court reasoned, "there is no need to protect plaintiff from defendant's stale claim, in that it is no staler than his own, being based upon the very same accident." *Id.* at 195–96.

---

[2] The court never explicitly mentions what his claim or claims were, but the subsequent language in the decision suggests he asserted a claim for negligence.

interference counterclaim. Thus, if § 600.5823 applies, Vulcan's counterclaim, though otherwise untimely, could still be asserted as an offset against Wausau's contract claims.

The district court agreed with Wausau, however, that Vulcan's counterclaim must "relate to" Wausau's breach of contract claim in order for § 600.5823 to apply. Because Vulcan's counterclaim sounds in tort and is entirely independent of Wausau's contract claim, the district court found that the counterclaim savings statute did not apply.

In reaching its conclusion, the district court relied on the Michigan Court of Appeal's opinion in *Thiel v. The Scene, Inc.*, 324 N.W.2d 510 (Mich. Ct. App. 1982). There, the state court dismissed a number of cross-claims as untimely, explicitly finding that they were not "saved" because they were independent of the claims in the principal action. The question presented in that case did not arise under § 600.5823, however. As the court noted in *Thiel*, § 600.5823 provides for the tolling of *counterclaims*; it does not apply to *cross-claims*. *Id.* at 512. Thus, the state court concluded that it would need to resort to its equitable powers if it were to allow a cross-plaintiff to assert otherwise untimely claims against cross-defendants. *Id.* While the court concluded that it did have such power, it also concluded that it should limit the exercise of that power to circumstances in which the cross-claims assert claims for indemnification or contribution. *Id.* The court reasoned that, because such claims could not have been brought in the absence of the principal action, it was "equitable" to allow those claims to be asserted, even if untimely. Because its decision was based on the exercise of its equitable powers, however, the court refused to allow the assertion of wholly independent, untimely cross-claims, finding that equity did not counsel such a result. The court in *Thiel* then ordered the cross-claims in that case dismissed because they were independent of the principal law suit. *Id.* While the court in *Thiel* may have created an equitable savings provision for cross-claims, it did not purport to apply

counterclaim, arguing that it was untimely under Michigan's three-year statute of limitations for tort actions of that nature. While acknowledging the untimeliness of its counterclaim, Vulcan argued that it could still assert the claim pursuant to a special savings statute governing counterclaims, Mich. Comp. Laws. § 600.5823. The district court found § 600.5823 inapplicable and granted Wausau's motion to dismiss Vulcan's counterclaim.

On April 20, 2001, the district court entered judgment in favor of Wausau and against Vulcan in the amount of $217,989.[1] Vulcan filed a timely motion for reconsideration and to amend order on April 26, 2001 with respect to the court's order granting summary judgment to Wausau. Vulcan filed another timely motion for reconsideration and to amend judgment on April 30, 2001, this time as to the court's order dismissing the counterclaim The district court denied both of these motions on May 16, 2001. This appeal followed.

## III. Analysis

### A. The District Court Correctly Granted Summary Judgment to Wausau on its Breach of Contract Claim

The district court found that Vulcan breached its contracts of insurance with Wausau when it refused to remit the final premiums due as designated in the Stipulation of Settlement. The district court also found that Wausau's contract claim was timely because it was filed within six years of the premium determinations reflected in the settlement agreement. Although the district court acknowledged that Vulcan's *initial* refusal to pay any additional premiums occurred, as to two of the three policy years, more than six years before the filing of the complaint, the district court

---

[1] The amount differs from the June 13, 1997 amount because a final re-audit was completed after the settlement agreement was signed, resulting in a credit of $6,803.

concluded that contract claims for those payments did not accrue for statute of limitations purposes until the Michigan Insurance Commissioner determined the precise amount due. On this point, the district court reasoned that the statutory appeals process Vulcan was entitled to, and did invoke, was implied into each policy of insurance issued at the direction of the Facility. Thus, the district court concluded that Wausau could not enforce its asserted right to premiums until the appeals process with respect to the scope of the premiums owed was completed, and that the statute of limitations with respect to any claim for such premiums did not begin to run until that point. Having found a valid contract, and an enforceable contract claim, the district court dismissed Wausau's quasi-contractual unjust enrichment claim.

Vulcan makes the same arguments here that it presented below regarding the timeliness of Wausau's contract action and the parties' rights and obligations under the policies of insurance. We have reviewed the parties' briefs and the record below, and find that the district court correctly and meticulously analyzed these issues. We find it unnecessary to restate that analysis here and, instead, adopt the district court's analysis as our own. For the reasons stated in Section III of the district court's opinion, we **AFFIRM** the district court's grant of summary judgment to Wausau on its breach of contract claim and Vulcan's breach of contract counterclaim and **AFFIRM** the dismissal of Wausau's unjust enrichment claim.

### B.    The District Court Erred in Determining That M.C.L. § 600.5823 Does Not Apply

We hold, however, that the district court erred in finding that Vulcan's counterclaim for tortious interference with a business relationship is barred by the statute of limitations.

Vulcan's counterclaim is based on the letter Wausau sent to the Facility on September 7, 1994. As the district court correctly determined, a tortious interference with business

relationship claim is generally governed by a three-year statute of limitations. Mich. Comp. Laws. § 600.5805(9); *James v. Logee*, 388 N.W.2d 294, 296 (Mich. Ct. App. 1986). Wausau argues, accordingly, that Vulcan had only until September 7, 1997 to file this claim against it, a deadline Vulcan did not meet; Vulcan did not file the counterclaim until November 21, 2000.

Vulcan argues that, despite Mich. Comp. Laws § 600.5805(9), its counterclaim *is* timely by virtue of Michigan's "counterclaim savings statute," which provides:

[t]o the extent of the amounts established by plaintiff's claim the periods of limitations prescribed in this chapter do not bar a claim made by way of counterclaim unless the counterclaim was barred at the time the plaintiff's claim accrued.

Mich. Comp. Laws § 600.5823. In essence, this statute allows a defendant to bring an otherwise untimely counterclaim if the counterclaim would have been timely had it been filed when the plaintiff's claim accrued. The statute exacts a cost for this right, however. The defendant's recovery is limited to the amount, if any, the plaintiff recovers against it—in other words, the defendant can only use this provision to offset any obligations it might have to the plaintiff, but not as an independent basis for recovery; it can operate as a shield, but not as a sword.

In the first part of its opinion, the district court concluded, and we concur, that Wausau's breach of contract claim accrued, at the earliest, on July 23, 1996—when Vulcan agreed on the record in front of the Michigan Insurance Commissioner to a mechanism for assessing the premiums owed under the policy—or, at the latest, on June 13, 1997—when Vulcan acknowledged its debt in writing after the re-audit. Both of these accrual dates falls within three years of September 7, 1994, the date on which Vulcan asserts Wausau committed the acts giving rise to its tortious