File Name: 09a0818n.06

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 07-1019**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 22, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KEVIN KARL SMITH, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  NORRIS, CLAY and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.  Kevin Smith challenges his 240-month prison sentence, imposed for hiring a hit man to murder his ex-wife, among other misdeeds.  Because the sentencing court imposed a procedurally reasonable sentence and because Smith's requested subpoenas would not have bolstered his sentencing arguments, we affirm.

I.

Smith's 1995 divorce with Monica Jarvis did not go well.  For years, they fought over the custody of their three children.  In March 2003, the custody battle took an unfortunate turn when Smith asked his half-nephew Michael Slaninka to find someone to murder Jarvis.  At the time, Smith knew that Slaninka had been arrested on federal explosives charges five months earlier, but he did

not know that Slaninka had agreed to serve as a confidential informant as part of his plea deal with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

A little bit of knowledge is dangerous. Slaninka told ATF agents about Smith's intent to hire a hit man. The agents showed Slaninka how to record all future conversations with Smith and helped him perpetuate the conspiracy to murder Smith's ex-wife. As events unfolded, Slaninka played the part of the middleman, telling Smith that Kent West, an ATF special agent, would be the assassin. Smith eventually agreed to pay West $2,000 for the murder and mailed him a hand-drawn map of Jarvis's residence, photos of Jarvis and $1,000 in cash. Smith also promised to provide West with a firearm.

On July 22, 2003, ATF agents arrested Smith after he dropped off a .25 caliber handgun for West at a predetermined location. The agents also executed a search warrant at Smith's home, where they found a .22 caliber pistol. A federal grand jury indicted Smith on four counts: (1) murder for hire; (2) being a felon in possession of a firearm; (3) possession of a firearm with its serial number removed; and (4) possession of a firearm in furtherance of a crime of violence.

At the trial, Smith acknowledged his participation in the murder-for-hire scheme. But he claimed that the government entrapped him, as he never would have taken part in the scheme but for Slaninka's encouragement. According to Smith, in the months between Slaninka's November 2002 arrest and Smith's March 2003 murder-for-hire proposal, Slaninka frequently made caustic comments about Jarvis to Smith, including that she was "ruin[ing] these kids," Tr. III at 57, and that

Smith "ought to just kill [Jarvis]." Tr. III at 51. It was Slaninka, Smith claims, who first said that he knew a "professional" who "could take care of [Smith's] problem." Tr. III at 56.

The jury rejected Smith's entrapment defense and convicted him on all four counts. At sentencing, the court imposed a two-level obstruction-of-justice enhancement because Smith perjured himself when he testified (1) that he did not know that the bag provided to West contained a firearm and (2) that the pistol found in his bedroom closet did not belong to him. The judge imposed a 240-month sentence.

Smith appealed, and we affirmed his convictions. *See United States v. Smith*, 191 F. App'x 383 (6th Cir. 2006). "Smith," we reasoned, "based his entrapment defense entirely on his own testimony, which the jury could have reasonably rejected as lacking credibility." *Id.* at 387. We vacated his sentence in light of the Supreme Court's then-recent decision in *United States v. Booker*, 543 U.S. 220, 268 (2005), and remanded the case for resentencing.

Before the second sentencing hearing, the district court denied Smith's motion to subpoena records of telephone calls between him and Slaninka from September 2002 to July 2003. *See* Fed. R. Crim. P. 17(b). At the hearing, the court rejected (1) Smith's "imperfect entrapment" argument in favor of leniency, (2) his challenges to the original sentencing court's obstruction-of-justice enhancement and (3) his challenges to the prior "stacking" of consecutive sentences. The court again imposed a 240-month sentence.

## II.

### A.

Smith first claims that the court imposed a procedurally unreasonable sentence. That problem arises when a sentencing court "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). We review such challenges for an abuse of discretion. *Id.*

Smith argues that the district court (1) failed to rule on his objections to the pre-sentence report, (2) mistook his "imperfect entrapment" argument for a reiteration of his trial defense and (3) "presumed that a guideline sentence is reasonable." Smith's Br. at 28. He is wrong on each front.

First, the court adequately considered Smith's claim that the government did not identify sufficient conduct to trigger an obstruction-of-justice sentencing enhancement. *See* USSG § 3C1.1. At Smith's original sentencing hearing, the judge pointed to parts of Smith's testimony that were "preposterous" and "clearly . . . perjurious." Sent. Tr. III at 12–13. At resentencing, the court acknowledged that "the trial judge was closer to" the issue than he was—another judge having handled the trial and initial sentencing—and thus deferred to the first judge's perjury finding. Resent. Tr. at 22. This reference to the original judge's findings, and the court's understandable deference to the original judge's findings, satisfied the court's obligation to explain its "basis for rejecting" Smith's arguments. *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006).

The record also shows that the court considered and rejected Smith's objection to the "stacking" of consecutive sentences onto his murder-for-hire sentence. The guidelines call for a range of 151 to 188 months on the murder-for-hire conviction, and the statute caps the sentence at 120 months. *See* 18 U.S.C. § 1958(a); USSG § 5G1.1. At resentencing, as at the first sentencing hearing, the district court imposed the maximum 120-month sentence, plus a concurrent 120-month sentence for being a felon in possession of a firearm and two consecutive 60-month sentences for the remaining firearm convictions, resulting in a total prison sentence of 240 months. The court noted that the Sixth Circuit had approved the same consecutive sentences on Smith's first appeal, *see Smith*, 191 F. App'x at 388–89, an issue left untouched by *Booker*, *see Oregon v. Ice*, ___ U.S. ___, 129 S. Ct. 711, 716–18 (2009), and appropriately declined to revisit Smith's objection, Resent. Tr. at 4. The court had ample discretion to take this path. *See United States v. Haynes*, 468 F.3d 422, 426 (6th Cir. 2006).

Second, Smith claims that the court "refused to evaluate" his "imperfect entrapment" argument—namely that, even if the government's encouragement did not rise to the level of culpability-removing entrapment, it amounted to a culpability-mitigating factor that the court should have considered. Smith's Br. at 38. "Imperfect entrapment" was itself an imperfect theory of sentencing mitigation at its conception, and it has become more imperfect since. The theory derives from a pre-*Booker* line of Ninth Circuit cases, which increased the flexibility of district court judges to grant downward *departures*. Defendants, that court held, "who are predisposed [to commit a crime] but who are then pressured unduly by the government to go forward with the offense" may

"receive a downward departure based on imperfect entrapment." *United States v. McClelland*, 72 F.3d 717, 724–25 (9th Cir. 1995); *see also United States v. Bala*, 236 F.3d 87, 92 (2d Cir. 2000).

Before *Booker*, this circuit never embraced imperfect entrapment as an independent ground for obtaining a downward departure. And since *Booker*, it is difficult to see the necessity of adopting the doctrine, as the same not-quite-entrapment factors that a defendant could invoke as a basis for a downward departure could readily be swept up by the general §3553(a) mitigating factors—particularly the "nature and circumstances" of the offense—in the course of deciding whether to grant a downward *variance. Cf. United States v. Guest*, 564 F.3d 777, 781 (6th Cir. 2009) (reasoning that the *Booker* line of cases does not require the Sixth Circuit to reevaluate its rejection of the related "sentencing entrapment" theory of departure).

Be that as it may, we need not take a final stand on the issue today. Whatever the status of imperfect entrapment as a theory of sentencing mitigation, Smith is wrong to say that the trial court refused to consider it. At the resentencing hearing, the court addressed Smith's imperfect-entrapment claim and distinguished his sentencing and trial arguments:

> [M]itigation issues . . . are always available for the defendant to indicate that he was under some kind of influence of some kind or was incapable of fully comprehending all he was doing. That's always available to the Court.

Resent. Tr. at 7. The court then added that "[t]he character and mind-set of the defendant, predisposed or otherwise, at the time he committed the offense is open for discussion by this Court," thereby drawing a line between "mitigation of the offense," which the jury verdict covered, and "mitigation by the individual," which the sentencing hearing would cover. *Id.* at 8. The trial court

had no reason separately to talk about "mitigation by the individual" at sentencing—and whether Smith "was under some kind of influence" or otherwise "was incapable of fully comprehending all he was doing"—if it was only considering whether Smith's theory of entrapment excused the crime, as opposed to providing a reason for a lower sentence. The court then separately evaluated Smith's mitigation argument in the course of applying the § 3553(a) factors. Because Smith's entrapment argument at sentencing relied solely on his testimony, the perjury finding of the trial judge, together with the jury's rejection of Smith's underlying entrapment defense, made this sentencing argument an uphill fight. Add to these considerations the reality that Slaninka and West offered Smith several opportunities, never accepted, to back out of the plan, and it becomes clear that the district court reasonably rejected this argument and had ample bases for doing so.

Third, Smith targets the district court's statement that "there is a presumption of reasonableness as a matter of law that goes with a guideline sentence." Resent. Tr. at 20. The "presumption of reasonableness," it is true, applies only on appellate review, not at sentencing. *Nelson v. United States*, ___ U.S. ___, 129 S. Ct. 890, 891–92 (2009); *see Gall*, 552 U.S. at 50. And sentencing courts, it is also true, must treat the Guidelines as a "starting point and the initial benchmark" before "mak[ing] an individualized assessment based on the facts presented" under the § 3553(a) factors. *Gall*, 552 U.S. at 49–50. But that is exactly what the district court did—ultimately, that is. Immediately after making its infelicitous "presumption of reasonableness" comment, the court said, "By that I mean this. It is a starting-off point for the Court's consideration of a sentence sufficient, but not greater than necessary[,] to comply with the sentencing statute of

–7–

3553(a)." Resent. Tr. at 20–21. The court then proceeded to weigh the parties' arguments for a variance from the Guidelines just as *Rita*, *Gall* and the rest of the Court's cases require.

The Supreme Court, it bears adding, did not decide *Rita v. United States*, 551 U.S. 338, 347 (2007), which established that the "presumption of reasonableness" applies only to appellate review, until June 21, 2007—six months *after* Smith's December 21, 2006 resentencing hearing. Before *Rita*, the Sixth Circuit had held that district courts "did not err in viewing the Guidelines as . . . presumptively reasonable," *United States v. Cage*, 458 F.3d 537, 543 (6th Cir. 2006), and indeed the district court in this case relied on one of those pre-*Rita* cases in mentioning the presumption during the sentencing hearing, *see* Resent. Tr. at 20 ("recogniz[ing] under *United States v. Williams* [436 F.3d 706, 708 (6th Cir. 2006)] that there is a presumption of reasonableness . . . that goes with a guideline sentence"). One can imagine therefore why the district court might make such a remark. What matters here, however, is that no matter what the court (initially) *said*, what it (eventually) *did* was entirely consistent with *Gall* and *Nelson*. Smith's sentence was procedurally reasonable.

B.

Smith next argues that the district court should have granted his subpoena request. Rule 17(b) says that district courts should subpoena evidence at an indigent defendant's request if the evidence is "necess[ary] . . . for an adequate defense." Fed. R. Crim. P. 17(b). We review a district court's denial of a Rule 17(b) motion for abuse of discretion, *see United States v. Sprouse*, 472 F.2d 1167, 1168 (6th Cir. 1973), and will reverse only under "exceptional circumstances," *United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990).

The district court did not exceed its discretion in rejecting this subpoena request. The phone records would not have revealed the contents of the conversations. They would have shown only the number of calls to and from a given phone number. The main purpose of the records—to corroborate Smith's account that Slaninka began to contact Smith frequently after Slaninka's November 2002 arrest—had already been established by other evidence. Slaninka testified that he and Smith spoke "once a week, sometimes more, sometimes less" in the period leading up to Smith's murder-for-hire proposal and that those conversations often revolved around family and Smith's ongoing custody dispute. Later recordings show that Smith and Slaninka spoke more often after ATF entered the picture. Not just the pre-existing evidence, but the government's concession as well, show that Smith and Slaninka telephoned each other frequently after Slaninka's arrest. And even if the records revealed that "Slaninka initiated a large number of calls" only after his ATF arrest, R.100 ¶ 3, the frequency of the calls sheds no new light on Smith's core allegation—that "Slaninka frequently reported to Smith that Monica Jarvis (the victim) was mistreating Kevin Smith's children and that Slaninka knew a hit man who could kill Monica Jarvis," *id.* ¶ 4.

That the district court did not mention "necessity" in denying Smith's motion does not change things. In an abuse-of-discretion setting, we generally will "enforce a district court's orders if [the] grounds for doing so are apparent from the record before us." *Wausau Underwriters Ins. Co. v. Vulcan Development, Inc.*, 323 F.3d 396, 403–04 (6th Cir. 2003). That is readily so here.

III.

For these reasons, we affirm.

**CLAY, Circuit Judge, concurring in part and dissenting in part.** Because the district court did not abuse its discretion by denying Defendant's motion for subpoenas and payment of costs under Rule 17(b), I concur with Section II(B) of the majority opinion. However, because the district court applied an improper presumption of reasonableness to a guideline sentence and failed to consider in its entirety the nature and circumstances of the offense, as required by 18 U.S.C. § 3553(a), we should vacate the sentence and remand to the district court for resentencing. Therefore, I respectfully dissent as to the remainder of the opinion.

## I.

"The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States*, 129 S. Ct. 890, 892, 172 L. Ed. 2d 719 (2009). *See also United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007). Thus, while an appellate court may apply a presumption that a guideline sentence is reasonable, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita v. United States*, 551 U.S. 338, 351, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007). *See also United States v. McConer*, 530 F.3d 484, 501 (6th Cir. 2008) (vacating a sentence because the district court misstated its mandate and explicitly applied a presumption of reasonableness to the defendant's guideline sentence).

The district judge at resentencing stated on the record: "The Court's responsibility is first of all to recognize under *United States v. Williams* that there is a presumption of reasonableness as a matter of law that goes with a guideline sentence." (Resentencing Tr. at 210.) Contrary to the majority's implication, the fact that Defendant was resentenced before the Supreme Court decided

*Rita* and *Nelson* does not mean that we can uphold a sentence that we now know was procedurally unreasonable. The Supreme Court has made clear that a new rule of criminal procedure is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final. *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 9L. Ed. 2d 649 (1987).

Furthermore, even without the benefit of subsequent Supreme Court clarification, the district judge in the instant case misinterpreted *United States v. Williams*, 436 F.3d 706 (6th Cir. 2006), when he found that *Williams* requires a district court to apply a presumption of reasonableness to a guideline sentence. In *Williams*, this Court held that "sentences properly calculated under the guidelines" should receive "a rebuttable presumption of reasonableness," implying that this presumption applies at the appellate level. *Williams*, 436 F.3d at 708. However, the Court rejected Defendant's argument that district court had presumed the guideline range to be reasonable. As a result, the Court did not address the issue of whether a district court should–or even may–apply a presumption of reasonableness to a guideline sentence.

In the instant case, after the district judge stated that he was applying a presumption of reasonableness, he did go on to clarify that he interpreted the presumption of reasonableness to mean that a guideline sentence "is a starting-off point for the Court's consideration of a sentence sufficient, but not greater than necessary to comply with the sentencing statute of 3553(a)." (Resentencing Tr. at 20-21.) Furthermore, in evaluating the sentence the sentence he imposed, he said that they are "appropriate sentences" and "are sufficient, but not greater than necessary to comply with the purposes of this statute." (*Id.* at 23.) Thus, although the judge stated that he was going to apply a presumption of reasonable to a guideline sentence, which he is prohibited from doing, it is unclear

whether he actually went on to engage in the prohibited conduct. However, this Court should take the district judge at his word and defer to his statement that he was applying a presumption of reasonableness to the guideline sentence. Since Supreme Court precedent explicitly prohibits the district judge from applying such a presumption, the district court erred by doing so.

## II.

The question of whether a district court should consider a defendant's argument of imperfect entrapment as part of its consideration of "the nature and circumstances of the offense" under § 3553(a)(1) appears to be one of first impression for this Court. Although no court appears to have addressed whether a district court must consider a defendant's argument of imperfect entrapment as part of the § 3553(a) analysis, other circuits have held that a district court may grant a downward departure based on the district court's finding that the government had engaged in aggressive encouragement that did not rise to the level of entrapment. *United States v. McClelland*, 72 F.3d 717, 725 (9th Cir. 1995). *See also United States v. Wise*, 976 F.2d 393 (8th Cir. 1992). *But see United States v. Sanchez*, 138 F.3d 1410, 1414 (11th Cir. 1998), *cert. denied*, 525 U.S. 892 (1998); *United States v. Walls*, 70 F.3d 1323, 1329-30 (D.C. Cir. 1995). The Ninth Circuit has held a downward departure to be permissible even where the jury rejected a defense of entrapment at trial and the defendant initiated the criminal activity, so long as the defendant had not pled guilty. *McClelland*, 72 F.3d at 725. "[E]vidence of imperfect entrapment, like evidence of imperfect coercion, is in some cases a legitimate ground for departure because it may show that the defendant is both less morally blameworthy than an enthusiastic [defendant] and less likely to commit other crimes if not incarcerated." *Id.* at 726 (internal quotations omitted). An *en banc* panel of this Court

has cited to *McClelland* with approval, noting that "courts have utilized downward departures in cases where the government has induced a defendant to commit a crime, but the defense of entrapment is not warranted." *United States v. Coleman*, 188 F.3d 354, 358 (6th Cir. 1999).

Because evaluating the government's role in encouraging the defendant to commit the offense is necessary in order to take into account all of the circumstances of the offense, I would find that declining to consider imperfect entrapment is a violation of *Booker*. Here, the district court should have considered whether Slaninka's initiating dozens of calls to Defendant over a number of months and bringing up the logistics of hiring a hitman, while not rising to the level of an entrapment defense, affected the circumstances of the offense in such a way as to make Defendant less culpable. The district court was free to find that the government's conduct did not affect the commission of the offense, but it was required to analyze Defendant's argument and make a finding on the record. Contrary to the majority's assertion that the trial court addressed Defendant's imperfect entrapment claim, the district judge did not consider Defendant's argument as part of his general consideration of "mitigation issues." (Resentencing Tr. at 7.) The district judge made clear that he believed he was foreclosed from considering Defendant's imperfect entrapment argument because a jury had rejected Defendant's entrapment defense and the Sixth Circuit had affirmed that the evidence supported the jury's verdict. The trial court stated:

> [Defendant] wants to invite the Court to go back and look at what is called, quote "grounds of imperfect entrapment," end of quote. This Court believes that it cannot because this Court believes that the Court of Appeals has dealt with that issue and has specifically foreclosed the Court's ability to go back and rehash something that it has already decided.

(*Id.* at 4-5.)

By conflating Defendant's entrapment defense at trial–which goes to whether he was guilty of the crime–with his imperfect entrapment argument at sentencing–which goes to the nature and circumstances of the crime–the district court erred.  Contrary to the government's assertion that the question of whether the district court should have considered Defendant's imperfect entrapment argument is not within the scope of the Court's *Booker* remand, this issue goes to whether the court adequately considered all of the § 3553(a) factors, not to the validity of the conviction.  Furthermore, at resentencing, the government conceded as much.  The prosecutor noted that Defendant was free to argue imperfect entrapment and that "[i]f he can convince this Court that others are responsible for his conduct less than him, it's probably a factor that the Court ought to take into account."  (*Id.* at 9.)  In other words, the government argued that the weight of the evidence defeated Defendant's argument, not that the Court was precluded from considering the argument based on the jury's rejection of the entrapment defense.

## III.

Because I would vacate the sentence on the basis that it was procedurally unreasonable, I respectfully dissent.