**James F. CLARK, M.D.,**
**Plaintiff–Appellant,**

v.

**WEST SHORE HOSPITAL,**
**Defendant–Appellee.**

**No. 00–1419.**

United States Court of Appeals,
Sixth Circuit.

July 31, 2001.

Before RYAN and COLE, Circuit Judges; MARBLEY, District Judge.*

## OPINION

MARBLEY, District Judge.

Plaintiff–Appellant James F. Clark, M.D. ("Clark") appeals from the district court's order dismissing his § 1983 due process action, along with all of his pendant[1] state law claims, for failure to state a cause of action. Clark's state law claims were dismissed with prejudice.

The primary question for this Court to consider is whether Defendant–Appellee West Shore Hospital ("Hospital") breached its "Pathologist Agreement" ("Contract") with Clark when it terminated the Contract effective January 29, 1999. While we must also consider whether Clark has stated a viable claim under his due process theory, his good faith and fair dealing theory, and/or his tortious interference with business relations theory, the resolution of those issues will be controlled by our resolution of his breach of contract claim.

As the basis for his contract claim, Clark asserts that, under the "Disputes" provision of the Contract, he was entitled to a hearing before the Joint Conference Committee of the Hospital prior to the Contract's termination. The Hospital counters, as it did below, that it complied completely with the "Termination" provisions of the Contract; thus, there arose under the Contract no "dispute" that would have necessitated a hearing.

The district court rejected Clark's reading of the Contract and granted the Hospital's motion to dismiss on that point. The district court then dismissed Clark's § 1983 claims, finding that Clark had no property interest in his continued employment once the Contract was terminated, and that the Hospital did nothing to violate any liberty interest he may have had.[2] The district court next dismissed Clark's good faith and fair dealing claim, finding that no such duty exists in Michigan in the employment context, and that even if such a duty did exist, nothing the Hospital did would have breached it. Finally, the district court dismissed Clark's tortious interference cause of action, finding that such a claim could not be based upon an action specifically allowed by contract.

We find that the district court correctly interpreted the Contract, and thus properly dismissed Clark's breach of contract claim. Since Clark had no property interest in his employment relationship with the Hospital once the Contract was terminated, and since he failed to allege facts sufficient to support a finding that the Hospital violated his liberty interest in his professional reputation, the district court properly dismissed Clark's due process claims. As no implied covenant of good faith and fair dealing exists in Michigan in the em-

---

* The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

1. We acknowledge that this characterization, while legally accurate, is factually strained: Clark's fundamental claim is one of breach of contract. This case is in federal court because Clark also alleged that his Fourteenth Amendment due process rights were violated when Defendant–Appellee West Shore Hospital terminated his employment contract without affording him a hearing. Additionally, Clark alleged that the Hospital breached its duty of good faith and fair dealing, and tor-

tiously interfered with Clark's business relations.

2. The district court did not specifically address Clark's substantive due process claim. This is not terribly surprising, as Clark's Brief in Opposition to Defendant's Motion for Relief under Federal Rule of Civil Procedure 12(b)(6) and 12(c) offers a single conclusory sentence (tucked away within its "protected property interest" discussion) on the issue, and Clark's counsel made no mention of the substantive due process claim at oral argument.

ployment context, and as even if such a duty did exist, nothing the Hospital did would have breached it, the district court properly dismissed Clark's good faith and fair dealing claim. Because the allegedly tortious act of which Clark complains was lawful, and because Clark does not allege that it was done with malicious intent, the district court properly dismissed his tortious interference with business relations claim. Accordingly, we AFFIRM the district court's order in its entirety.

## I. BACKGROUND

### A. Factual Background

Plaintiff James F. Clark, M.D. is a physician licensed to practice medicine in the state of Michigan. West Shore Hospital is a public hospital located in Manistee, Michigan. On April 18, 1991, Clark entered into a pathologist agreement with the Hospital; the agreement was for a period of two years, and was renewed without significant change in 1993, 1995 and 1997. The Contract at issue in this lawsuit was executed on August 27, 1997.

The Contract's "Term of Agreement" is as follows:

This Agreement shall remain in full force and effect for a term of two (2) years from and after the 1st day of July, 1997 unless terminated in accordance with the provisions under the paragraph below entitled "Termination."

The final provision of the "Termination" clause of the Contract–the only termination provision at issue here–provides:

It is also agreed that the Hospital or Pathologist shall have the privilege of cancelling and terminating this Agreement in the sole discretion of either party upon one hundred twenty (120) days written notice either party to the other.

On October 2, 1998, Burton O. Parks, Administrator of the Hospital, sent a letter to Clark that stated, in pertinent part:

"Last night, the Board decided to end the Agreement with Dr. Clark for the provision of pathology services at West Shore Hospital. This will become effective January 29, 1999...." On December 29, 1998, Clark sent a letter to the members of the Hospital's Board wherein he requested "a forum within three weeks" where he would be able to "[t]ell 'the rest of the story'" in an attempt to "[h]ave/help the Board of Trustees reverse the [decision to terminate the Contract]." No such forum was provided.

The Contract contains a "Disputes" clause, which states, in pertinent part:

All disputes arising under this Agreement shall be subject to the following terms and conditions:

.        .        .        .        .

b. all other disputes shall be determined by the Joint Conference Committee of the Hospital, subject to review by the Board of Trustees of the Hospital[.]

Primarily at issue here is whether the Hospital violated this "Disputes" clause when it refused to afford Clark a hearing following the Hospital's decision to terminate the Contract.

### B. Procedural History

Clark initiated this lawsuit on September 20, 1999, when he filed a complaint in the United States District Court for the Western District of Michigan. The complaint set forth a claim pursuant to 42 U.S.C. § 1983, alleging that the Hospital acted under color of state law to deprive Clark of his property rights and liberty interests, as protected by the Fourteenth Amendment. Specifically, Clark alleged that the Hospital's denial of a hearing and lack of explanation for its decision to terminate the Contract amounted to a stripping of Clark's protected liberty and property interests without due process of law.

Clark also alleged that the Hospital's decision to terminate the Contract was arbitrary and capricious, in violation of Clark's substantive due process rights. As pendant claims, Clark alleged: (1) breach of contract; (2) breach of duty of good faith and fair dealing; and (3) tortious interference with business relations. For relief, Clark sought: (1) a monetary judgment "in an amount in excess of one million dollars"; (2) costs and attorneys' fees; (3) punitive and exemplary damages; and (4) such further relief as deemed just and equitable.

The Hospital filed its answer on October 18, 1999. The Hospital filed its affirmative defenses in a separate document on the same day. These papers presented the Hospital's core theory of defense: Clark had no right to a hearing, so there was no contractual breach; once the breach of contract claim fails, the remainder of Clark's causes of action necessarily follow suit.

On January 14, 2000, the Hospital filed its Motion for Relief under Federal Rule of Civil Procedure 12(b)(6) and 12(c). On February 15, 2000, Plaintiff filed its Answer to Defendant's Motion for Relief under Federal Rule of Civil Procedure 12(b)(6) and 12(c). On February 29, 2000, Defendant filed its Response. On March 13, 2000, Judge McKeague held oral argument on Defendant's motion and, at the close of oral argument, granted the Hospital's motion in its entirety. On March 20, 2000, a written Order of Dismissal was entered. On April 17, 2000, Clark timely filed his Notice of Appeal from the Order of Dismissal.

We note that, while Clark seeks reinstatement of each of his claims, he does *not* specifically challenge the district court's decision to retain jurisdiction over his state law claims after dismissing his § 1983 claim–which was the sole basis of subject matter jurisdiction–pursuant to Rule 12(b)(6) and/or Rule 12(c).[3]

## II. STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Soper ex rel. Soper v. Hoben,* 195 F.3d 845, 850 (6th Cir.1999) (citing *Wright v. MetroHealth Med. Ctr.,* 58 F.3d 1130, 1138 (6th Cir.1995)). In evaluating a motion to dismiss for failure to state a claim, the Court must construe the complaint in the light most favorable to the plaintiff, *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1039–40 (6th Cir.1991), accepting as true all factual allegations contained in the complaint, *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993), and determine "whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Id.* This Court is not, however, bound to accept as true unwarranted factual inferences, *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987), or legal conclusions unsupported by well-pleaded facts. *Teagardener v. Republic–Franklin Inc. Pension Plan,* 909 F.2d 947, 950 (6th Cir.1990). A Rule 12(c) dismissal is reviewed under an identical standard. *See Pilgrim v. Littlefield,* 92 F.3d 413, 415 (6th Cir.1996).

---

**3.** The district court was unclear as to whether it dismissed Clark's claims under Rule 12(b)(6) or Rule 12(c). This is not an issue of consequence, however, as the two, for the purposes of this appeal, are functionally identical in that each requires the district court: to construe the complaint in the light most favorable to the plaintiff; to accept all of the complaint's factual allegations as true; and to determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *See Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir. 1998). Each is also reviewed *de novo* by this Court. *Id.*

## III. DISCUSSION

Though Clark's § 1983 claim is the basis for federal jurisdiction over this lawsuit, his breach of contract claim is clearly both his primary cause of action and the fulcrum which will determine the viability of the rest of his claims. Like the district court, therefore, we will address Clark's breach of contract claim first.

### A. Breach of Contract Claim

We find that the district court properly dismissed Clark's breach of contract claim because it is uncontested that the Hospital complied with the termination provisions of the Contract; thus, contrary to Plaintiff's assertions, there was no cognizable dispute between the parties to implicate the Contract's "Disputes" provisions.

First, we note that Michigan law governs this action. The Contract contains a choice-of-law clause: "This Agreement . . . shall be governed by and construed in accordance with the laws of the State of Michigan." Both parties are from Michigan, performance of the Contract was to occur–and did occur–in Michigan, and neither party contests that Michigan law governs this dispute.

■ Under Michigan law, "[t]he primary goal of contract interpretation is to honor the intent of the parties." *Conagra, Inc. v. Farmers State Bank,* 237 Mich.App. 109, 602 N.W.2d 390, 401 (Mich.Ct.App. 1999) (citing *UAW–GM Human Res. Ctr. v. KSL Recreation Corp.,* 228 Mich.App. 486, 579 N.W.2d 411, 414 (Mich.Ct.App. 1998)). When "the contract language is clear and unambiguous, [ ] its meaning is a question of law for the court to decide." *Id.; see also G & A Inc. v. Nahra,* 204 Mich.App. 329, 514 N.W.2d 255, 256 (Mich.

Ct.App.1994) (noting that "[i]f a contract's language is clear, its construction is a question of law for the court."). Contractual language is to be interpreted in accordance with its ordinary and plain meaning; technical and torturous constructions are to be avoided. *G & A Inc. .,* 514 N.W.2d at 256 (citing *Bianci v. Auto. Club of Mich.,* 437 Mich. 65, 467 N.W.2d 17, 20 n. 1 (Mich.1991)).

In the present case, the Hospital terminated the Contract pursuant to the following provision:

> It is also agreed that the Hospital or Pathologist shall have the privilege of cancelling and terminating this Agreement in the sole discretion of either party upon one hundred twenty (120) days written notice either party to the other.

Thus, so long as the Hospital provided Clark with (1) written notice, (2) of at least 120 days, it was entitled to terminate the Contract in its sole discretion.

It is undisputed that, on October 2, 1998, the Hospital provided Clark with written notice of its intention to terminate the Contract effective January 29, 1999 (122 days later). Clark therefore could not–and indeed does not–allege that the Hospital violated the Contract's termination clause.

■ What Clark does allege is that the Hospital breached the Contract when it refused to offer him a hearing, pursuant to the Contract's "Disputes" provisions, on its decision to terminate the Contract. The "Disputes" provisions, however, come into play only when a dispute arises under the Contract.[4] In the present case, Clark disagreed with the wisdom of the Hospital's decision to terminate the Contract, but did not dispute its right to do so.[5] Since the Hospital's *decision* to terminate the Con-

---

4. The "Disputes" section of the Contract begins: "All disputes arising under this Agreement shall be subject to the following terms and conditions[.]"

5. When pressed by the district court at oral argument on the source of any *right* of Clark to a hearing. Plaintiff's counsel could do no better than: "I think he has the right to at least go to the Committee and the Board and

tract did not arise under the Contract, the "Disputes" provisions were never implicated and Clark never had an entitlement to a hearing. Thus, the Hospital did not breach the Contract by refusing to provide Clark a hearing.

This Court, therefore, AFFIRMS the district court's dismissal of Clark's breach of contract claim.

## B. Section 1983 Due Process Claims

■ Section 1983 does not itself create any substantive rights, but rather provides a right of action for the vindication of independent constitutional guarantees. *Braley v. City of Pontiac,* 906 F.2d 220, 223 (6th Cir.1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish both that the defendant acted under color of state law and that the defendant deprived him of a federal statutory or constitutional right. *United of Omaha Life Ins. Co. v. Solomon,* 960 F.2d 31, 33 (6th Cir. 1992). In the present case, only the second element is in dispute.[6] Clark alleges that he was deprived of protected property and liberty interests without due process of law, and that the Hospital's decision to terminate the Contract violated his substantive due process rights.

We find that the district court properly dismissed Clark's § 1983 procedural due process claims because Plaintiff's property interest in continued employment at the Hospital expired with the Contract, and

because Clark failed to allege any action by the Hospital sufficient to violate his liberty interest in his professional reputation. Clark's substantive due process allegation is simply specious: terminating a contract in compliance with its terms neither shocks the conscience nor violates a specific constitutional guarantee.

### 1. Procedural Due Process

First, Clark asserts that the Hospital deprived him of a protected property interest "by refusing to permit Dr. Clark to continue to provide professional pathology services at the Hospital[ .]" Plaintiff apparently views the property interest implicated as being comprised of two parts: "Dr. Clark has a protected property interest in his medical staff privileges and his right to practice pathology at the Hospital." Second, Clark claims that the Hospital deprived him of a protected liberty interest "by terminating the Agreement, by giving Dr. Clark no valid reason for the termination and by refusing to provide a hearing. . . ."[7]

### a. Property Interest

■ The Hospital did not deprive Clark of any protected property interest. First, as Clark's counsel conceded at oral argument, Clark's medical staff privileges were never actually terminated. Rather, Plaintiff claims that the Hospital's termination of the Contract resulted in the "effective termination of his staff privileges."[8] Sec-

---

ask them to change their mind." In other words, though Plaintiff admittedly received the notice to which he was entitled under the operative termination provision, he also wanted the opportunity to attempt to influence how the Hospital exercised its sole discretion.

6. In its answer, the Hospital conceded that it "acted in accordance with and under color of state ... law[ ]...."

7. In his appellate brief, Plaintiff also relies on a portion of his complaint situated within "Count IV—Tortious Interference with Busi-

ness Relations" in support of this charge: "Defendant has improperly interfered with Dr. Clark's business relationships by making false claims to members of the medical staff, Hospital employees, and community [members] regarding the quality of Dr. Clark's pathology services."

8. It seems that Clark's "effective termination" argument is this: Dr. Clark is a pathologist; he can only practice pathology if he has access to a pathology lab; that access perished with the Contract: his medical staff privileges

ond, Clark's "right to practice pathology," at least his right to do so at West Shore Hospital, perished with the Contract. Once the 120–day notice period expired, Clark became the functional equivalent of an employee-at-will. As this Court has previously noted, "[a]n at-will employee is subject to dismissal at any time and without cause; consequently, an at-will employee cannot effectively claim a protectable property interest in his or her job." *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141. (6th Cir.1997).[9]

### b. Liberty Interest

■ Clark failed to make allegations sufficient to sustain a claim that the Hospital violated his protected liberty interest in his professional reputation. In *Ludwig v. Board of Trustees of Ferris State University*, 123 F.3d 404 (6th Cir.1997), this Court explained: "A liberty interest in one's reputation is implicated ... only when five elements are satisfied." *Id.* at 410. The necessary elements are:

1. "[T]he stigmatizing statements must be made in conjunction with the plaintiff's termination from employment." *Id.*
2. "[A] plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." *Id.*
3. "[T]he stigmatizing statements or charges must be made public." *Id.*
4. "[T]he plaintiff must claim that the charges made against him were false." *Id.*
5. "[T]he public dissemination must have been voluntary." *Id.*

Though Clark did not specifically allege that the purportedly stigmatizing statements were made in conjunction with the Hospital's termination of the Contract, such an inference could be drawn from a generous reading of the complaint. Prongs three, four and five are likewise satisfied. With respect to prong two, however, Plaintiff's complaint is clearly insufficient. The most Plaintiff alleges–and one has to leave "Count I—Deprivation of Due Process Rights" to find this–is that the Hospital "ma[de] false claims ... regarding the quality of Dr. Clark's pathology services." Such an allegation is a far cry from one capable of implicating a protected liberty interest: "A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty." *Ludwig*, 123 F.3d at 410 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

### c. Dismissal Proper

Thus, because Plaintiff's property interest in continued employment at the Hospital perished along with the Contract, and because Plaintiff failed to allege any action by the Hospital sufficient to violate his liberty interest in his professional reputation, the district court properly dismissed Clark's § 1983 procedural due process claims.[10] This Court, therefore, AF-

---

thus became worthless to him and "effectively terminated" when the Hospital terminated the Contract. This argument is undermined by two serious flaws: first, it seems that no other court has recognized the "effective termination" of medical staff privileges as a possible violation of a protected property interest; second, the argument assumes that the medical staff privileges themselves have no value independent of the Contract–if such is the case, it is hard to imagine how the staff privileges could constitute a protected proper-

ty interest of this doctor. In short, we find Clark's "effective termination" claim legally and factually meritless.

**9.** We note that Clark did not allege that he was terminated for any reason so contrary to public policy as to be actionable.

**10.** Because we find that the Hospital did not impinge upon any of Clark's protected interests, we need not consider the sufficiency of the deprivation-related process.

FIRMS the district court with respect to its dismissal of Clark's § 1983 procedural due process claims.

## 2. Substantive Due Process

■ While Plaintiff's appellate brief offers no discussion of the issue, his complaint does allege that "Defendant's decision to terminate Dr. Clark's contract ... was arbitrary and capricious, and in violation of Dr. Clark's substantive due process rights." We have recognized two substantive due process strains that may properly support a § 1983 action: state action that has deprived an individual of a particular constitutional guarantee, and state action that so "shocks the conscience" as to amount to a violation of one's federal civil rights. *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir.1997). Terminating a contract in accordance with the procedures set forth therein is neither a deprivation of a particular constitutional guarantee nor conscience-shocking. The district court's dismissal of Plaintiff's substantive due process claim, therefore, is AFFIRMED.

## C. Good Faith and Fair Dealing Claim

This Court finds that the district court properly dismissed Clark's good faith and fair dealing claim[11] because no such duty exists in the employment context in Michigan, and even if such a duty did exist, the Hospital would not have breached it by terminating the Contract in compliance with the requirements for so doing set forth therein.

■ Michigan courts have "refused to recognize a cause of action for breach of an implied covenant of good faith and fair dealing in the employment context." *Barber v. SMH (US), Inc.*, 202 Mich.App. 366, 509 N.W.2d 791, 795 (Mich.Ct.App.1994) (citing *Hammond v. United of Oakland, Inc.*, 193 Mich.App. 146, 483 N.W.2d 652, 655 (Mich.Ct.App.1992)). The *Barber* court specifically found an independent contractor relationship to fit within the "employment context" for the purposes of this rule. *Id.* As the Contract here similarly fits within the "employment context," it, as a matter of law, did not contain an implied covenant of good faith and fair dealing–obviously, the Hospital could not breach a non-existent warranty.

■ Furthermore, "[t]he implied covenant of good faith under Michigan law ... neither overrides nor replaces any express contractual term. It does not provide the basis for a cause of action independent of a valid existing contract. Nor does it require a party to ignore, forego or waive its express contractual rights." *Van Arnem Co. v. Mfrs. Hanover Leasing Corp.*, 776 F.Supp. 1220, 1223 (E.D.Mich.1991) (citations omitted). In the present case, is undisputed that the Hospital complied fully with the 120–day–notice termination provision. To find that the Hospital's utilization of that provision could form the basis for a breach of implied covenant of good faith claim would be tantamount to

---

11. In his complaint, Clark asserted two theories in support of his good faith and fair dealing claim:

    1. "The implied allegation by the Hospital that conduct on the part of Dr. Clark somehow justified termination of the contract without providing Dr. Clark a hearing constitutes a breach of the Hospital's duty of good faith and fair dealing."

    2. "The Hospital's reliance on the 120 day notice provision of the contract without

providing any type of hearing to Dr. Clark after same was requested was in violation of its duty of good faith and fair dealing under the Agreement."

While it is unclear from the face of the complaint whether Clark would have this claim sound in contract or tort, his appellate brief clarifies that the cause of action is being pressed in contract. *See Brief for Appellant* at 21–22.

requiring the Hospital to waive its express contractual rights, in clear contravention of Michigan law. *See id.*

Accordingly, we AFFIRM the district court with respect to its dismissal of Clark's good faith and fair dealing claim.

### D. Tortious Interference with Business Relations Claim

We find that the district court correctly dismissed Plaintiff's tortious interference with business relations claim because the allegedly tortious act which Clark complains damaged his expectancy was justified in law, and because Clark does not allege that it was done with malicious intent.

■ Under Michigan law, the elements a plaintiff must show to establish a *prima facie* case of tortious interference with a business relationship are:

(1) the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Mich. Podiatric Med. Ass'n v. Nat'l Foot Care Program, Inc.*, 175 Mich.App. 723, 438 N.W.2d 349, 354 (Mich.Ct.App.1989) (citing *Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich.App. 361, 354 N.W.2d 341,

346 (Mich.Ct.App.1984)). With respect to the third element, the plaintiff must plead more than merely that the defendant acted with purpose and/or knowledge: "one who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Feldman v. Green*, 138 Mich.App. 360, 360 N.W.2d 881, 891 (Mich.Ct.App.1984). Finally, the plaintiff "must demonstrate, with specificity, affirmative acts by the interferer which corroborate the unlawful purpose of the interference." *Mich. Podiatric*, 438 N.W.2d at 355 (citing *Feldman*, 360 N.W.2d at 886).

■ In the present case, Clark contends that the Hospital's termination of the Contract has caused the cessation of the business relationships that Clark had developed with the other members of the Hospital's medical staff (who previously referred their patients to him). Clark has not alleged that the "interference" was done with malicious intent, however, and his contention that the Hospital's termination of the Contract was unjustified in law cannot withstand critical analysis.[12] *See supra* Part III.A. Furthermore, Clark has not alleged–nor, obviously, has he pleaded with specificity–affirmative acts by the Hospital "which corroborate the unlawful purpose of the interference."[13] *Mich. Podiatric*, 438 N.W.2d at 355.

---

12. The Hospital's termination of the Contract, in compliance with the provisions therefor, clearly was not per se wrongful.

13. Clark does allege that "Defendant has improperly interfered with Dr. Clark's business relationships by making false claims to members of the medical staff, Hospital employees, and [the] community regarding the quality of Dr. Clark's pathology services." Plaintiff's counsel conceded at oral argument before the

district court, however, that it was the Hospital's termination of the Contract that eviscerated Plaintiff's relationships with the medical staff. Any claim based upon disparaging comments, therefore, necessarily fails to satisfy the fourth, "resultant damage," element of the *prima facie* case. Additionally, the complaint paragraph Plaintiff relies upon fails to "demonstrate, with specificity, affirmative acts by the interferer which corroborate the unlawful purpose of the interference." *Mich.*

Because Clark failed to make allegations sufficient to establish the third element of a *prima facie* case of tortious interference with a business relationship, we AFFIRM the district court's dismissal of that claim.

## IV. CONCLUSION

The district court correctly interpreted the Contract, and thus properly dismissed Clark's breach of contract claim. Since Clark had no property interest in his employment relationship with the Hospital once the Contract was terminated, and since he failed to allege facts sufficient to support a finding that the Hospital violated his liberty interest in his professional reputation, the district court properly dismissed Clark's due process claims. As no implied covenant of good faith and fair dealing exists in Michigan in the employment context, and as even if such a duty did exist, nothing the Hospital did would have breached it, the district court properly dismissed Clark's good faith and fair dealing claim. Because the allegedly tortious act of which Clark complains was justified in law, and because Clark did not allege that it was done with malicious intent, the district court properly dismissed his tortious interference with business relations claim. Thus, for the foregoing reasons, we AFFIRM the order of the district court dismissing this case.

*Podiatric*, 438 N.W.2d at 355 (citing *Feldman*, 360 N.W.2d at 886).

