NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0360n.06

No. 15-2213

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| AHMAD MOURAD; HOUSE OF HARDTOPS, INC.; MOSS & ASSOCIATES, INC.; KAERY KORKES; UNIVERSAL LOCK & SECURITY SERVICE, INC., | ) ) ) ) ) | **FILED** Jun 30, 2016 DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| MARATHON PETROLEUM COMPANY LP, | ) ) | |
| Defendant-Appellee. | ) | |

Before: KETHLEDGE and DAVIS,[*] Circuit Judges.

DAVIS, Senior Circuit Judge. After Appellee Marathon Petroleum Company LP ("Marathon") successfully executed a residential buyout program, purchasing ninety-four percent of the homes in the Oakwood Heights subdivision of Detroit, Michigan, and expanded its Oakwood Heights–adjacent refinery, a group of Oakwood Heights small business owners (collectively, "Appellants") filed suit alleging that Marathon's actions amounted to tortious interference with a business relationship or expectancy and nuisance. The district court dismissed Appellants' second amended complaint with prejudice, agreeing with Marathon that Appellants had failed to plead factual allegations sufficient to give rise to a plausible claim for relief under either legal theory. Appellants brought this appeal, arguing that the district court

---

[*] The Honorable Andre M. Davis, Senior Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation. Following argument in this case, Judge White recused herself. This decision is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

erred in dismissing their claims. For the reasons discussed below, we affirm the district court's judgment dismissing with prejudice Appellants' second amended complaint.

I.

Appellants' second amended complaint sets forth the following relevant factual allegations. Marathon and its predecessors have owned and operated an oil refinery near the Oakwood Heights subdivision of Detroit for more than forty years. R. 21 (Second Am. Compl. ¶¶ 3, 11(a)) (Page ID #165–66). On November 8, 2002, Marathon's immediate predecessor proposed the Detroit Heavy Oil Upgrade Project ("DHOUP") by filing an application to install with the relevant regulatory body. *Id.* ¶¶ 4, 11(b) (Page ID #165–66). The application evidenced the company's intent to eventually expand the perimeter of the refinery "through the Oakwood Heights [s]ubdivision all the way to the Rouge River" and revealed that the expanded operation "would result in [a] significant increase in emissions above . . . significant levels for several regulated NSR pollutants, including sulfur dioxide, filterable PN, particulate matter less than 10 microns, nitrogen oxides, volatile organic compounds[,] and carbon monoxide." *Id.* ¶¶ 11(b)–(c) (Page ID #166). On March 19, 2008, Marathon's predecessor moved forward with the plan, filing an application for a permit to install the DHOUP, *id.* ¶ 11(e) (Page ID #166), and the expanded operations launched on November 6, 2012, *id.* ¶ 4 (Page ID #165).

Throughout the refinery's history, Marathon and its predecessors have been defendants in at least four lawsuits brought on behalf of nearby residents alleging that the refinery polluted the air and caused a nuisance. *Id.* ¶ 11(a) (Page ID #166). In early 2012, the United States sued Marathon "for its ongoing violations of environmental statutes and rules" at the refinery. *Id.* ¶ 11(g) (Page ID #167). The action resulted in a consent judgment that, among other things, imposed a $450,000 civil penalty against Marathon. *Id.*

In light of the refinery's history of facing legal action as a result of alleged environmental degradation and Marathon's recognition that the expanded refinery operations would likely give rise to new civil complaints, Appellants contend that Marathon instituted the Oakwood Heights Property Purchase Program ("Residential Buyout Program") to preempt future adverse litigation and enable future expansion. *Id.* ¶¶ 11(h)–(i) (Page ID #167). Marathon implemented the Residential Buyout Program on November 2, 2011, circulating information on the Program to Oakwood Heights residents via a public informational handbook. *Id.* ¶¶ 7–8 (Page ID #165). Appellants allege that Marathon carried out the Residential Buyout Program "wrongfully, surreptitiously and maliciously," as evidenced by the fact that Marathon required some, if not all, residents, in selling their properties to Marathon, to give up any claim that they may have had against Marathon, even though the value of the residences was not increased to account for the relinquishing of such legal rights. *Id.* ¶¶ 11(k)–(m) (Page ID #167–68). Moreover, the Residential Buyout Program relied on purchase agreements which, by their terms, were "non-negotiable." *Id.* ¶ 11(n) (Page ID #168). As of the filing of Appellants' second amended complaint, Marathon had purchased at least 277 of the 294 Oakwood Heights residential properties. *Id.* ¶ 8 (Page ID #165).

Appellants, the owners of businesses located in or near the Oakwood Heights subdivision, allege that Marathon knew that they had business relationships or expectancies with the Oakwood Heights residents before it instituted the Residential Buyout Program. *Id.* ¶¶ 5–7 (Page ID #165). Further, Appellants allege that, because Marathon and its predecessors had indicated their intent to expand the refinery and acquire dominion over the entirety of the Oakwood Heights subdivision and because Marathon specifically chose not to extend its buyout efforts to the businesses or commercial properties in and around Oakwood Heights, it is clear

that Marathon's intent was to cut off Appellants' access to their customer base and then, once Appellants were struggling financially, purchase Appellants' properties at a diminished value as "the only viable buyer of realty in the area." *Id.* ¶¶ 11(j), 12, 14(d) (Page ID #167–69). Appellants contend that Marathon, in carrying out its plan to disrupt and terminate Appellants' business relationships with their customer base, "acted with both legal and factual malice." *Id.* ¶¶ 15–16 (Page ID #169).

As for their nuisance claim, Appellants allege that, since November 6, 2012—the date that Marathon's expanded DHOUP operations went live—the refinery has "generated an increase in its emission of pollutants into the ambient air." *Id.* ¶¶ 4, 19 (Page ID #165, 169). Specifically, the expanded refinery has released increased amounts of "sulfur dioxide ($SO_2$), particulates, hydrogen sulfide ($H_2S$), nitrogen oxides, volatile organic compounds (VOCs)[,] carbon monoxide (CO) and hazardous air pollutants." *Id.* ¶ 20 (Page ID #169–70). Appellants contend that the pollutants are "carried regularly and/or continuously by air currents into the Oakwood Heights subdivision and onto" their premises and that the pollutants "unreasonably interfere with [Appellants'] use and enjoyment of their premises and interfer[e] with the successful and profitable operation of their businesses." *Id.* ¶¶ 21–22 (Page ID #170).

Appellants initially filed suit on November 3, 2014, in the Eastern District of Michigan. R. 1 (Compl.) (Page ID #1–4). Shortly thereafter, Marathon filed a motion to dismiss, R. 5 (Mot. to Dismiss) (Page ID #14–53), and Appellants responded by filing a first amended complaint, R. 8 (First Am. Compl.) (Page ID #57–61). After Marathon moved to dismiss the first amended complaint, R. 11 (Mot. to Dismiss First Am. Compl.) (Page ID #66–110), the district court set the motion for hearing, R. 18 (Notice of Mot. Hr'g) (Page ID #161).

At the June 15, 2015 hearing, Marathon argued that the factual allegations included in Appellants' first amended complaint do not entitle them to relief. R. 23 (Tr. for Hr'g on Mot. to Dismiss First Am. Compl. at 4) (Page ID #222). Specifically, as to Appellants' claim of tortious interference with a business relationship or expectancy, Marathon contended that Appellants had failed to "plead specific affirmative acts . . . to corroborate" the element of malice, as required by Michigan law. *Id.* at 6–7 (Page ID #224–25). And with regard to Appellants' nuisance claim, Marathon argued that dismissal was appropriate because Appellants had failed to plead how increased emissions resulted in Appellants losing the use and enjoyment of their properties and how the unspecified loss amounted to significant harm. *Id.* at 10–11 (Page ID #228–29). Marathon also asserted that, regardless of any pleading deficiencies, Appellants' nuisance claim was time barred in light of the refinery's continual operations throughout the preceding forty-two years. *Id.*

In response, Appellants first addressed Marathon's arguments directed at their nuisance claim, explaining that the claim falls within the applicable statute of limitations because it specifically targets the increased emissions that came about as a result of the 2012 expansion of the refinery's operations. *Id.* at 14 (Page ID #232). As to the factual allegations underpinning the nuisance claim, Appellants explained that they would "be happy to amend" the "claim to explain with greater clarity what exactly [the] claims are and how they flow from the changed situation." *Id.* With regard to their tortious interference with a business relationship or expectancy claim, Appellants acknowledged the Sixth Circuit case law cited by opposing counsel as standing for the proposition that a "plaintiff must demonstrate with specificity affirmative acts that corroborate the improper motive of the interference." *Id.* at 15 (Page ID #238). Appellants, however, argued that the Sixth Circuit had misapplied Michigan law and

Federal Rule of Civil Procedure 9(b) in reaching its decisions in *Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281 (6th Cir. 2010), and *Saab Automobile AB v. General Motors Co.*, 770 F.3d 436 (6th Cir. 2014). R. 23 (Tr. for Rh'g on Mot. to Dismiss First Am. Compl. at 15–24) (Page ID #233–42).

After questioning whether Appellants had sufficiently alleged that Marathon had operated with the specific purpose of interfering with Appellants' business relationships or expectancies, the district court gave Appellants leave to file a second amended complaint. *Id.* at 17–21, 25 (Page ID #235–39, 243). On July 17, 2015, Appellants filed a second amended complaint incorporating additional allegations regarding the Residential Buyout Program and the consent judgment reached in Marathon's litigation with the United States. R. 21 (Second Am. Compl.) (Page ID #164–70). The second amended complaint did not contain any new allegations with regard to Appellants' nuisance claim. *Id.* at 6–7 (Page ID #169–70).

On July 22, 2015, Marathon again moved to dismiss Appellants' complaint in full, largely relying on the same arguments proffered during the hearing on its motion to dismiss Appellants' first amended complaint. R. 22 (Mot. to Dismiss Second Am. Compl.) (Page ID #172–218). The district court agreed with Marathon and dismissed Appellants' second amended complaint with prejudice on September 15, 2015. R. 28 (Sept. 15, 2015 Op. & Order) (Page ID #290–310). The district court concluded that Appellants had (1) failed to plead sufficient factual allegations to "plausibly support the conclusion that [Marathon] acted with the purpose of interfering with [Appellants'] business operations or that it acted with malice, both of which are required to state a viable claim for" tortious interference with a business relationship or expectancy, and (2) failed to provide any factual allegations to support their claim of nuisance and instead merely parroted the elements of a nuisance action. *Id.* at 8–19 (Page ID #297–308).

Further, because Appellants had already benefited from the opportunity to amend their complaint on two prior occasions, the district court denied Appellants' request to amend a third time. *Id.* at 20 (Page ID #309).

On October 8, 2015, Appellants filed this timely appeal, contending that the district court, in dismissing their claims with prejudice, incorrectly applied federal pleading standards and inappropriately denied their request for leave to amend.

## II.

This Court examines each claim in turn and reviews *de novo* whether the district court properly granted Marathon's motion to dismiss. *Mertik v. Blalock*, 983 F.2d 1353, 1356 (6th Cir. 1993). "A claim survives such a motion if its '[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.'" *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## A.

To prevail on a tortious interference with a business relationship or expectancy claim under Michigan law,[1] a plaintiff must allege:

> (1) the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted.

*Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003) (quoting *Clark v. W. Shore Hosp.*, 16 F. App'x 421, 430 (6th Cir. 2001)). The third element, which is the primary element in dispute in the present appeal, "requires more than just purposeful or knowing

---

[1] In this diversity action, we apply Michigan substantive law but federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

behavior on the part of the defendant." *Id.* Rather, a plaintiff "must allege the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship." *Feldman v. Green*, 360 N.W.2d 881, 886 (Mich. Ct. App. 1984)). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Badiee v. Brighton Area Sch.*, 695 N.W.2d 521, 539 (Mich. Ct. App. 2005)

"A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Prysak v. R.L. Polk Co.*, 483 N.W.2d 629, 635 (Mich. Ct. App. 1992). Appellants attempt to characterize Marathon's purpose in rolling out the Residential Buyout Program as a nefarious endeavor to expand a pollution-causing refinery while preempting future civil liability. In other words, they argue that Marathon's conduct was wrongful per se. However, even taking Appellants' allegations as true, Marathon's conduct does not amount to per se wrongful acts because Michigan courts have explained that, where a defendant is "motivated by legitimate . . . business reasons," its actions will not be deemed "per se wrongful." *Mich. Podiatric Med. Ass'n v. Nat'l Foot Care Program, Inc.*, 438 N.W.2d 349, 355 (Mich. Ct. App. 1989); *see also Formall, Inc. v. Cmty. Nat'l Bank of Pontiac*, 421 N.W.2d 289, 293 (Mich. Ct. App. 1988) (delineating the two ways in which a plaintiff may plead the third element of a tortious interference with a business relationship or expectancy claim and explaining "that defendants motivated by legitimate personal and business reasons are shielded from liability" against a per se wrongful act theory of tortious interference). Appellants no doubt take reasonable issue with some of the consequences of an expanded refinery operation and Marathon's decision to enact the Residential Buyout Program, but the fact remains that the desire

to expand one's business and to pursue programs that minimize one's exposure to future litigation are legitimate business motivations.

Accordingly, we must determine whether Appellants sufficiently pled that Marathon's otherwise lawful conduct was unjustified in this context and undertaken with malice for the purpose of invading Appellants' business relationships with their Oakwood Heights customers. The district court answered this question in the negative, and we similarly conclude that Appellants failed to sufficiently plead the third element of a tortious interference with a business relationship or expectancy claim.

In reviewing the sufficiency of Appellants' second amended complaint, we "accept[] as true all well-pleaded allegations in the complaint." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246 (6th Cir. 2012). We do not, however, adopt "legal conclusion[s] couched as . . . factual allegation[s]." *Id.* Accordingly, to survive a motion to dismiss, Appellants must have set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In response to the district court's conclusion that Appellants had failed to allege facts supporting a fair inference that Marathon had acted with malice or for the purpose of interfering with Appellants' business relationships or expectancies, Appellants point to Federal Rule of Civil Procedure 9(b). They insist that Rule 9(b) merely requires that they plead malice and purpose generally and that no factual allegations supporting such assertions are required. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). While Rule 9(b) clearly dictates that allegations regarding a defendant's mental state are not subject to the heightened pleading requirements imposed on claims for fraud or mistake, Appellants fail to recognize that pleadings regarding the conditions of a person's mind, including malice and intent, remain bound by the plausibility requirement of Rule 8. *See Republic Bank & Trust*, 683 F.3d at 247. Relying on *Iqbal*, this Circuit, as well as our sister circuits, have explained that, "[a]lthough conditions of a person's mind may be alleged generally, the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face." *Id.* (internal citations and quotation marks omitted); *see also Biro v. Conde Nast*, 807 F.3d 541, 544–45 (2d Cir. 2015) (explaining that *Iqbal* makes clear that "Rule 8's plausibility standard applies to pleading intent"); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible."); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) ("Rule 9(b) ensures there is no *heightened* pleading standard for malice, but malice must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated.").

Here, the factual allegations of Appellants' second amended complaint fail to support a plausible inference that Marathon's expansion of its refinery operations, as furthered by the Residential Buyout Program, was undertaken for the purpose of interfering with Appellants' business relationships or expectancies. As Appellants explain in their second amended complaint, Marathon's predecessor, as early as 2002, proposed the DHOUP by filing an application to install. R. 21 (Second Am. Compl. ¶ 11(b)) (Page ID #166). Appellants contend

that this application evidenced the company's "intent to expand its refinery perimeter eastward along Oakwood Boulevard through the Oak[wood] Heights Subdivision all the way to the Rouge River." *Id.* To facilitate this expansion, both in terms of growth of facility and minimization of potential future liability, Appellants assert that Marathon initiated the Residential Buyout Program and ultimately purchased 277 of the 294 residences in the Oakwood Heights subdivision. *Id.* ¶¶ 8, 11(h)–(i).

And to be clear, it was this successful implementation of the Residential Buyout Program that resulted in Appellants' small businesses being cut off from their customer base. Unfortunately for Appellants, as is clearly indicated by the factual allegations contained in their second amended complaint, the Residential Buyout Program was instituted for the purpose of expanding the refinery's operations and minimizing the likelihood of future civil litigation to develop as a result of the expanded operations. In fact, it is implausible that Marathon and its predecessors would have carried out a ten-year process to expand the refinery and purchase nearly all of the residences within the Oakwood Heights subdivision for the purpose of interfering with Appellants' customer base. While Appellants dedicate several factual allegations to demonstrating Marathon's (1) history of environmental degradation, (2) improper motivation in purchasing the Oakwood Heights residences as a means of preempting future lawsuits, and (3) wrongful means of acquiring the Oakwood Heights residences, such pleadings are of no import to Appellants' tortious interference with a business relationship or expectancy claim, as they are "untethered from an intent to interfere with [Appellants'] businesses." R. 28 (Sept. 15, 2015 Op. & Order at 15) (Page ID #304).

Appellants understandably take issue with Marathon's decision not to extend the Residential Buyout Program to the businesses or commercial properties located in and around

the Oakwood Heights subdivision, despite the fact that Marathon's plan was to eventually acquire the entirety of the subdivision for its expanded refinery. R. 21 (Second Am. Compl. ¶¶ 11(b), (j)) (Page ID #166). Appellants allege that these facts demonstrate Marathon's intent to diminish the market value of Appellants' businesses, recognizing that the businesses would be left without a customer base and would eventually be forced to close their doors, thereafter allowing Marathon, as "the only viable buyer of realty in the area," to purchase these additional properties at a severely discounted price. *Id.* ¶ 14(d). What Appellants fail to appreciate, however, is that they were harmed not by their exclusion from the Residential Buyout Program but by the Oakwood Heights residents deciding to sell their homes. Because the successful execution of the Residential Buyout Program was the conduct that actually interfered with Appellants' alleged business relationships or expectancies and because, as explained in Appellants' second amended complaint, Marathon enacted the Residential Buyout Program to facilitate the expansion of its refinery and preempt future lawsuits, Appellants have failed to plausibly allege that Marathon engaged in "a lawful act with malice and unjustified in law *for the purpose of* invading the contractual rights or business relationship[s] of another." *Feldman*, 360 N.W.2d at 891 (emphasis added).

In dismissing Appellants' second amended complaint, the district court carefully analyzed federal pleading standards, Michigan substantive law, and this Circuit's precedent to conclude that Appellants had failed to plead facts supporting a plausible inference that Marathon's expansion of its refinery operations, as furthered by the Residential Buyout Program, was undertaken maliciously or for the purpose of interfering with Appellants' business relationships or expectancies. Because we conclude that Appellants' factual allegations merely support the plausible inference that Marathon enacted the Residential Buyout Program to

facilitate the expansion of its operations and preempt future civil litigation and wholly fail to support a plausible inference that the Program was a veiled attempted to isolate Appellants from their customers, we affirm the district court's dismissal of Appellants' second amended complaint without engaging in an analysis of Appellants' allegations of malice.

B.

Appellants also challenge the district court's dismissal of their nuisance claim. To state a cause of action for private nuisance under Michigan law, a plaintiff must allege:

> (a) . . . property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the [defendant's] conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct.

*Cloverleaf Car Co. v. Phillips Petroleum Co.*, 540 N.W.2d 297, 301–02 (Mich. Ct. App. 1995) (quoting *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 720 (Mich. 1992)). In delineating the bounds of a nuisance claim, the Michigan Supreme Court explained "that a litigant seeking to recover for nuisance must show a legally cognizable injury, requiring proof of a significant interference with the use and enjoyment of land." *Adkins*, 487 N.W.2d at 722. While such a requirement admittedly caused some confusion as lower courts sought to discern the difference between demonstrating an injury and establishing damages, the *Adkins* court clarified that "an interference that is not substantial and unreasonable does not give rise to an action for damages against the person causing it, damnum absque injuria." *Id.* at 722–23. Here, it is Appellants' failure to plead factual allegations demonstrating the requisite unreasonable interference and significant harm that mandates dismissal.

In their second amended complaint, Appellants allege that (1) Marathon expanded its refinery operations, (2) the expanded refinery produced an increase in the emission of pollutants,

and (3) "[t]hese pollutants were carried regularly and/or continuously by air currents into the Oakwood Heights subdivision and onto the premises of [Appellants]." R. 21 (Second Am. Compl. ¶¶ 19–21) (Page ID #169–70). These well-pleaded factual allegations are entitled to the presumption of truth at the motion to dismiss stage. *See Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

Appellants' final pleading as to Marathon's purported nuisance, however, amounts to nothing more than a legal conclusion. Appellants contend that "[t]he pollutants discharged by Marathon unreasonably interfered with [Appellants'] use and enjoyment of their premises and interfer[ed] with the successful and profitable operation of their businesses thus constituting a nuisance as to them and their customers." R. 21 (Second Am. Compl. ¶ 22) (Page ID #170). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Appellants do not provide the factual enhancement necessary to support their legal conclusion that the pollutants amounted to an unreasonable interference with the use and enjoyment of their properties or that the interference caused significant harm. As the district court emphasized, while one could guess that "the increased emissions ensured the success of the property buyout program, thus interfering with the businesses by guaranteeing the neighborhood would be stripped of its consumer base," such a theory would be nothing more than conjecture, as Appellants failed to provide any factual allegations explaining "how the emissions interfered with their use and enjoyment of their properties." R. 28 (Sept. 15, 2015 Op. & Order at 19) (Page ID #308). Additionally, such a theory would be especially speculative and ill-suited to a private nuisance claim in light of the fact that Marathon enacted the Residential Buyout Program and began securing the Oakwood

Heights properties a full year before the refinery's operations were expanded and the increased pollutants were emitted. *See Adkins*, 487 N.W.2d at 717, 725–27 (concluding that plaintiffs could not make out a claim for private nuisance based on depreciating market values stemming from unfounded public fears of exposure to toxic chemicals and hazardous waste when no interference had actually occurred).

Because Appellants do not provide factual allegations to support their bare legal conclusions that the refinery's increased emissions unreasonably interfered with their use and enjoyment of their properties or that the interference resulted in significant harm, the district court correctly concluded that Appellants failed to state a cause of action for nuisance sufficient to survive Marathon's motion to dismiss.

C.

Lastly, Appellants argue that the district court erred in not affording them the opportunity to amend their complaint for a third time. Appellants did not directly request leave to amend their second amended complaint below. Rather, when Marathon noted its objection to any future amendment in its motion to dismiss Appellants' second amended complaint, Appellants responded by characterizing the objection as premature and instructing the district court, should the topic arise, to "keep in mind the guidance of Fed. R. Civ. P. 15(a)(2), that leave shall be freely granted." R. 24 (Answer to Mot. to Dismiss Second Am. Compl. at 26) (Page ID #270). In its September 15, 2015 Opinion and Order granting Marathon's motion to dismiss, the district court construed Appellants' reference to Rule 15(a)(2) as a request for leave to amend but determined that, because Appellants had already "benefitted from the opportunity to amend their pleadings twice," a third opportunity to amend was not appropriate. R. 28 (Sept. 15, 2015 Op. & Order at 20) (Page ID #309).

We review a district court's denial of a request for leave to amend under an abuse of discretion standard. *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006). Here, while Appellants reminded the district court of the appropriate standard for evaluating a request for leave to amend, they failed to articulate how application of that standard would benefit them, as they failed to offer a single reason as to why justice required the opportunity to amend in this instance. *See id.* (affirming denial of request for leave to amend when plaintiff "failed to state the grounds for relief with particularity"); Fed. R. Civ. P. 15(a)(2) (explaining that "[t]he court should freely give leave *when justice so requires*") (emphasis added). Further, Appellants, on two prior occasions, had failed to cure the pleading deficiencies highlighted by both Marathon and the district court in the briefing and during the hearing on Marathon's motion to dismiss Appellants' first amended complaint. *See Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (explaining that denial of a request for leave to amend may be appropriate "where there is . . . 'repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, . . . etc.'" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))). Accordingly, the district court did not commit a clear error of judgment in denying Appellants' request for leave to amend their complaint for a third time.

## III.

We are not without sympathy for Appellants' plight in having their nearby customers essentially "lured out" from under them through Marathon's offers they could not refuse, thereby decreasing the ultimate value of Appellants' commercial interests. But Marathon, in expanding its refinery and failing to bargain with Appellants before, or contemporaneously with, its bargaining with the Oakwood Heights homeowners, did not violate a legal interest of Appellants. For the reasons set forth above, the judgment of the district court is affirmed.